558                 COURT OF APPEALS OF WEST VIRGINIA.

Jan'y Term,        Genin *et al.* vs. Ingersoll *et al.*        1868.

# Wheeling.

Absent, HARRISON, J.[*]

## THOMAS H. GENIN, *et al.*, *vs.* JOSIAH INGERSOLL, *et al.*

### January Term, 1868.

1. Where one of several plaintiffs, after judgment in the court below in their favor, purchases the interest of the defendant in the subject matter of the controversy, such plaintiff may maintain, where he would be benefitted by a reversal of the judgment, a writ of error in the name of his vendor. But this rule would not apply to a release of error by one or more of several defendants. A distinction seems to be taken also between actions of personalty and realty, the latter class coming within the rule first mentioned.

2. Where a tenant is put in possession by a party having title to land and in fact the rightful owner of it, and remains on it setting up no title in himself, his possession is, in law, that of the party so putting him on the land.

3. Possession of co-tenants, who own equal undivided moieties, by a common tenant resident on the land at the time of a sale of the whole tract by one of the co-tenants, is notice sufficient, where the evidence shows such possession by the common tenant, of title in the other co-tenant to the purchaser, although the deed to the co-tenant whose interest is sought to be wrongfully sold, is not recorded.

4. If a party obtains possession of land from another's tenant, he himself becomes that other's tenant, and cannot be heard to set up title or possession in himself adverse to that under which he entered. If he would set up adverse possession he must restore that acquired through the tenant of another, and assert his adverse claim, or he must bring home to the landlord or a co-tenant notice of his adverse claim and holding under it, or he must actually oust the tenant.

In March, 1849, *Josiah Ingersoll* and *Matilda C.*, his wife, late *Matilda C. Whiting*, *Lucien Whiting*, and *Catherine A. Milbank*, the heir of *Catherine Milbank* late *Catherine Whiting*, who were the descendants and heirs of *Thomas W. Whiting*, deceased, brought a writ of right in the circuit court of *Marshall* county, against *Thomas H. Genin* and *Ann*, his wife, and *Henry Hillard*, demanding that they render unto them

---

[*] Absent from illness.

the one undivided fourth part of a certain tract of land containing 12,000 acres, lying in that county. The defendants pleaded the general issue, and a trial was had at the May term, 1852, when the jury found that the demandants had more right to the tenement than the defendants had to hold it. The defendants moved the court to set aside the verdict and grant a new trial upon the ground that it was contrary to law, the evidence and the instructions of the court; which motion was overruled and judgment entered for the demandants according to the verdict. To this opinion the defendants excepted and the whole evidence was made a part of the bill.

It appears from the evidence that on the 24th day of June, 1789, *Isaac Hillard,* who was a citizen resident in the State of *Connecticut,* obtained from the commonwealth of *Virginia* three patents for 4,000 acres of land each, lying in the county of *Ohio,* now *Marshall;* that on the 9th day of February, 1793, *Hillard* conveyed one undivided half of the whole 12,000 acres granted by the patents above mentioned, to *Nathaniel Delevan, Jr.,* of the State of *New York,* and that said *Nathaniel, Jr.,* conveyed the same interest on the 8th day of August, 1794, to *Daniel Delevan,* of same State, who by deed dated the 23rd day of February, 1796, conveyed the same to *Robert Whiting,* also of *New York.* That the latter party conveyed to *Helena Willett,* of *New York,* the said interest by deed dated the 6th day of April, 1797, who conveyed it to *Thomas W. Whiting* and *Edward Lawrence* and *Matilda C.,* his wife, by deed dated March 19th, 1817. The demandants claimed as heirs and descendants of *Thomas W. Whiting.*

The defendants claimed as follows: under a deed from *Isaac Hillard* to *Thurston Hillard,* his son, dated on the 25th day of April, 1808, which purported, for a consideration of 1,500 dollars, to convey the *whole* of the 12,000 acres, and that said *Thurston* died in 1810, leaving five heirs, *Charles, Ann, Maria, Henry* and *David J.* The defendant *Genin* married *Ann; Charles* died unmarried, leaving no issue; *Genin* purchased the interests of *Maria* and *David J.*

The deed from *Hillard* to *Delevan, Jr.;* was objected to on the trial on the ground of not having been recorded according to law, and that *Thurston Hillard* was a purchaser for valuable consideration without notice. It appeared to have been signed in the presence of two witnesses in the State of *New York,* and that one of them had gone, on the 11th day of March, 1796, before a party in *Dutchess* county who declared himself to be one of the judges of the court of common pleas for *West Chester* county, and after being duly sworn deposed that he saw *Hillard* sign and deliver the same as his voluntary act, and that he also saw the other subscribing witness sign it; whereupon it was admitted to record. This endorsement was also upon it: " October term, Ohio county, 1796. The within indenture was proven in court to be the act and ———— of *Isaac Hillard,* by a certificate thereto annexed, and ordered to be recorded. Recorded in book No. 3, page 369. Teste : *Moses Chapline,* clerk."

The same objection was made to the subsequent deeds and transfers, wherein the acknowledgements were substantially in the same form, down to the deed to *Helena Willett,* which latter, and the deed to *Thomas W. Whiting and others,* was never admitted to record in *Virginia* in any form.

It also appears from the evidence, that in the year 1800, one *John Clark* went on the land and occupied it under some agreement with *Isaac Hillard,* and that he was succeeded by one *Elijah Hubbs* in 1805, who also leased from *Isaac Hillard. Hubbs* occupied the land as a tenant only, and never made any claim of title. He continued to occupy the land in this capacity, until in 1815, when *Charles Hillard,* son and one of the heirs of *Thurston Hillard,* came to *Virginia* and re-let the land to him from the 8th day of December, 1815, till the 1st day of April, 1820.

The lands were proven to have been taken charge of by the heirs of *Thurston Hillard* and leased to tenants from this time down to the institution of the suit, and leases were produced from *Thomas H. Genin* to tenants as far back as

1824, though *Hubbs* does not appear to have re-leased until 1832, when he leased for two years, together with one *Thomas Clegg*, who lived on the land under various leases until the suit was brought. No notice to *Helena Willett* or her vendees, under whom the demandants claimed, of an adverse claim or possession, by virtue of these leases from the heirs of *Thurston Hillard*, was proven on the trial.

On the question of *Thurston Hillard* being a purchaser for valuable consideration, it was proven by three or four witnesses that *Isaac Hillard* was in failing circumstances at the time of the conveyance to said *Thurston* in 1808, and that the latter in fact did not pay anything for the land, but gave to his father, *Isaac*, a paper stating that he would, when *Isaac* got out of his trouble, re-convey the land to him, or in the event of his death, he would divide the land with the rest of his (*Isaac's*) children; and that *Thurston* was at the time in insolvent circumstances, and not in condition to pay 1,500 dollars for land, the consideration mentioned in the deed of 1808. There was considerable of testimony on this point, but this court thought it was conclusive of the question that the deed was without any valuable consideration. To the introduction of this testimony the defendants objected, but the court below overruled the objection and it was admitted. The court instructed the jury, at the instance of the defendants, as follows:

1. If the jury believe, from the evidence, that *Thurston Hillard* or his heirs, after the making and recording of the deed of April, 1808, to said *Thurston*, from *Isaac Hillard*, entered under and by virtue of said deed, into actual possession of the land conveyed thereby, claiming title thereto, under and by virtue of the said deed, and with intent to hold and possess the same under and by virtue of the said deed, as the sole owners thereof, and to his or their exclusive use and benefit, that they did so more than 18 years before the bringing of this suit, and have continued without interruption to actually so hold and possess the same for more than 18 years before the bringing of this suit, by continued, open, actual cultivation, clearings and enclosures, during all the

said period; that in so doing, they claimed to be the sole owners, by virtue of the said deed, and took to themselves during all the said period the rents and profits of the said land, as such sole owners, by virtue of the said deed, and to their own exclusive use and benefit, without any acknowlment or recognition during said period of any right or title in the demandants, or those they claim under, and that during all the said period neither the demandants nor those they claim under, were in possession of any part of the said land, then the court is of opinion that the jury ought to find an actual ouster of the demandants and those under whom they claim, and an adverse possession against them by the tenants for the period aforesaid, supposing the said demandants and those they claim under were co-tenants with *Isaac Hillard* in said land at the time of making the said deed to said *Thurston*, in 1808, by virtue of the unrecorded deed under which they claim. The court being of opinion that though it is generally true that one tenant in common is not permitted to set up his possession as adverse to the title of his co-tenant; yet that one entering into the possession of land under a deed for the whole, and claiming the entire interest under and by virtue thereof, as sole owner, would not thus be precluded, although it should subsequently appear that such deed conveyed only an undivided share, provided the proofs are sufficient in all other respects to establish the fact of such adverse possession.

2. But if the jury find that the said *Thurston* or his heirs were tenants in common with the demandants or those they claim under, as claimed by the demandants, and did not so enter and possess in manner and with the circumstances, as in the first instructions is supposed, then their possession should be deemed consistent with the title of the demandants and not adverse, until by clear, distinct, visible, notorious and open adversary or hostile acts of actual possession as against the rights of the demandants or those they claim under, the jury find that they actually ousted, or disseized their said co-tenants, and began to hold and possess in fact, adversely against them.

3. That if the jury find that the heirs of *Thurston Hillard* were in actual adverse possession of the land in controversy at the date of the deed of *Helena Willett*, in 1817, to *Thomas W. Whiting and others*, that then no title could pass to her grantees by the said deed.

4. When one enters and takes possession of land under a deed or patent, his possession is held to be constructive with his boundaries in such deed or patent, where there is no possession in any one else adverse to his title, and this rule holds as to adjoining and contiguous tracts.

5. That if there was fraud by *Thurston Hillard* against *Isaac Hillard* and his heirs, or by both against the creditors of *Isaac*, it should not affect, in this cause, any purchase they may find made by the defendant, *Genin*, of his cotenants.

6. If the jury believe that *Thurston Hillard* was a purchaser, by his deed of April, 1808, for valuable consideration, and without notice of the title of the demandants as shown by their unrecorded deeds, then they should reject from their consideration altogether the said unrecorded deeds. And the court is of opinion that said deed of April, 1808, to said *Thurston*, after the time which has elapsed, ought to be considered as *prima facie* evidence of a valuable consideration, moving from said *Thurston*, subject, however, to be repelled, discredited, or disproved by any evidence.

After the judgment of the court below, *Ingersoll*, one of the demandants, learning from his counsel that the defendants were about to apply for a writ of error from the court of appeals, and being likewise informed that they would probably reverse the judgment, bought out the claim of the defendants and took a conveyance to himself for their interest, and then obtained a supersedeas in the name of his vendors, from the court of appeals of *Virginia*, at *Lewisburg*, in 1857. *Catherine A. Milbank* (it does not appear by the record what became of the interest of *Lucien Whiting*,) moved to dismiss this supersedeas, in this court, upon the ground that the defendants, *Genin and others*, having parted with the subject of controversy after judgment, had no interest in

the pending cause, and that *Ingersoll* could not maintain a writ of error to reverse a judgment in his own favor.   The court overruled this motion and determined the cause on its merits.   The opinion of the president on the merits follows the opinion on the motion.

*Lamb & Paull* for plaintiffs in error.
*James S. Wheat* and *C. Boggess* for defendants in error.

BROWN, President.   A verdict and judgment having been recovered in a writ of right by the demandants Ingersoll and Milbank, against the tenant Genin and others, who were about to move for a writ of error to reverse the same, the demandant Ingersoll being advised by his counsel that the same would be reversed, and that he had better compromise with the adversary, bought the claim of the tenants and took their conveyance to himself, and then obtained a supersedeas to the said judgment in the name of his vendors.

The other demandant, Catherine A. Milbank, moved this court to dismiss the supersedeas upon the ground that the tenants having parted with the subject of controversy after judgment have no interest in the pending cause, and also that Ingersoll, one of the demandants, being the purchaser, cannot maintain a writ of error to reverse a judgment in his own favor.

Had the conveyance been to any one else than the demandant the grantee might have used the name of the grantor to reverse the judgment, which countervailed his claim to the land, for the same reason and with as much propriety as the holder of a note or bond made assignable by statute, may sue at common law in the name of the payee, nor would the payee, whose name is thus used, be allowed to come into court and dismiss the suit.

Had Ingersoll, the purchaser from the tenants, been the only demandant he could not maintain the writ of error to reverse his own judgment, for then there could be no controversy but with himself, nor right nor claim to controvert but in himself.   But inasmuch as he has the better title in

law, whatever may be the case in equity, to the whole land by his purchase, if the judgment be reversed and the tenant's title sustained, while he would only be entitled to eleven-twelfths if the judgment stands, he has such an interest in the reversal as would entitle him to use the name of his grantor to enforce it by writ of error or supersedeas. And there is, according to the authorities, a marked difference between joint plaintiffs and joint defendants maintaining a writ of error; in the former case a release of error by one may be pleaded in bar of the other, but not so of defendants, but if one joint defendant release error, it will not release or bar the right of the other to have his writ of error. And a distinction seems also to be taken between actions for personalty and actions for realty. *Razing* vs. *Ruddock*, 2 Croke Elizabeth, 648; *Blunt* vs. *Snedson*, 3 Croke James, 116, 117; 3 Bac. Ab., 380.

I think, therefore, that the purchaser, Ingersoll, had a right to prosecute this writ of error in the names of his vendors, the tenants, and that the motion to dismiss the supersedeas should be overruled.

The President, on the merits, said: The lands in controversy were granted by the commonwealth of Virginia on the 24th day of June, 1789, to Isaac Hillard, of Connecticut. He, on the 9th day of February, 1793, conveyed a moiety thereof to Nathaniel Delevan, of New York, who, on the 8th day of August, 1794, conveyed the same moiety to Daniel Delevan, of New York, who, on the 23rd day of February, 1796, conveyed the same to Robert Whiting, of the city of New York, who, on the 6th day of April, 1797, conveyed the same moiety to Helena Willett, of New York. Thus according to the decision in the case of *Robinett* vs. *Preston's heirs*, 2 Rob., the said Helena Willett and the said Isaac Hillard were seized of equal undivided moieties of the said lands as tenants in common, and so continued till the 25th day of April, 1808. As early as the year 1800 one John Clark entered and occupied the land under some agreement with Isaac Hillard. He was succeeded in 1805

by Elijah Hubbs, who entered and occupied under some agreement with Clark, and also with Isaac Hillard, and so continued under the Hillard title to the 8th day of December, 1815.    Hubbs set up no claim in himself, or any other adverse to the rightful owners.    In this condition the law (if there were any doubt of the character of his holding,) would refer it to the rightful owners, and his actual possession and occupation would be in law, the possession of the tenants in common owners thereof at the time, so that Helena Willett, of New York, and Isaac Hillard, of Connecticut, were not only seized by virtue of the patent and deeds aforesaid as tenants in common of equal undivided moieties of said lands, but they were in the actual possession thereof by their common tenant, Elijah Hubbs, who resided on it and held in subordination to them.

In this state of the case, Isaac Hillard, on the 25th day of April, 1808, made a deed to his son Thurston Hillard, of New Jersey, purporting to convey not an undivided moiety only, but the whole of said land in entirety.    The validity of this deed is not controverted so far as it operated to convey the moiety of said land, then owned by Isaac Hillard, but it is assailed as inoperative and void as to the other moiety and as to the owers thereof.    It is sought, however, to be sustained on the ground that as the deed from Isaac Hillard to Nathaniel Delevan, and the consecutive deeds to the parties respectively deriving title under him, not having been recorded in Virginia as required by law, the said Thurston Hillard is a purchaser for valuable consideration without notice.    But I think the evidence justifies the conclusion that the said deed was without valuable consideration, and was also taken with notice, for the possession of the co-tenants by their common tenant resident on the land at the time, was notice sufficient.

The deed to Thurston Hillard conveyed only a moiety of said land to him, and was void as to the other moiety, and as to Helena Willett, the owner thereof.    And the said Thurston and Helena thereby became thenceforth tenants in common and the tenant Hubbs resident on the land the

common tenant of both, and his possession their possession, and so continued till the death of Thurston Hillard, when the same relations arose and continued and were so continuing when Charles Hillard, of New Jersey, the son and executor of his father, Thurston Hillard, came to Virginia in 1815, and on the 8th day of December of that year re-let the said land to the said tenant Hubbs, till the 1st day of April, 1820, rendering rent. Upon this act it is sought to raise an adverse possession based upon the doctrine that where one tenant in common gives a deed of the whole premises and the grantee takes possession under that deed, claiming title to the whole, it is a good adverse possession to bar the right of the other tenant in common.

But this doctrine in its application here is to be modified by the circumstances of the case, and another well settled principle of law, viz: that when a party obtains the possession from another's tenant, he, himself, becomes that other's tenant, nor will he be heard to set up title or possession in himself adverse to that under which he entered. He must first restore the possession thus acquired and then assert his adverse claim, or if he would make his possession adverse, he must bring home notice of his adverse claim and holding under it to the landlord or co-tenant, or he must actually oust the co-tenant. Nothing short of this will do, and until it be done no adversary possession will begin upon which to base the bar of the statute of limitations nor to defeat the operation of a conveyance made by the other co-tenant; and applying this principle to the case at bar, Charles Hillard, by re-letting the common tenement to the common tenant, did not oust his co-tenant, Willett, and cannot be heard to hold under adverse claim till the possession is restored or notice of the adverse holding brought home to the other co-tenant, neither of which was done. There was, therefore, on the 19th day of March, 1817, and subsequent, no such adverse possession in the heirs of Thurston Hillard as would defeat the operation of the deed from Helena Willett to Thomas W. Whiting, Edward L. Lawrence and wife, under whom the demandants claim. Charles Hillard gave

other leases to other tenants similar to that to Hubbs, and which, like the lease to Hubbs, have been renewed from time to time by Genin and others to the time of the institution of the writ of right, but the multiplication of the leases cannot change or defeat the principle of one and all.

No notice of an adverse holding has been brought home to the demandants, or those under whom they claim, till the institution of the suit. They were residents abroad and had a tenant on the land, who continued on it, and who could not lawfully attorn to another, and whose holding could not be adverse without notice.

I think, therefore, that the verdict was warranted by the evidence, and the court below did not err in refusing to set it aside.

The judgment should be affirmed with costs and damages.

Judge MAXWELL concurred.

JUDGMENT AFFIRMED.