## KENNA'S HEIRS *vs.* QUARRIER'S HEIRS.

### January Term, 1869.

1. Parties who would avail themselves of the provisions of the act of 1841, in relation to forfeited and delinquent lands, which vests title in actual occupants of land who claim under title derived from grant, must show not only possession but title derived from or under grant of the commonwealth, and possession within the grant. Therefore, parties in an action of ejectment, who claim title from a patent issued on different entries and surveys of different dates, must show within which of the entries and surveys the land lies, claimed by them as actual occupants, and of which title is vested in them by the act of 1841.

2. Where there are a number of defendants to an action of ejectment and a trial and verdict is had as to part of them and the case is revived against the heirs of others, and a further trial is had as to them, no objection being made in the court below it is too late to raise the question of there. being error in the separate trials when the case is in this court.

J. Y. Quarrier and Monroe Quarrier bought at the commissioner's sale of forfeited and delinquent lands for the county of Kanawha, on the 9th day of August, 1841, a tract of land said to contain 50,000 acres, forfeited for the non-payment of taxes, as the property of John Beach and Philo Norton. In April, 1854, they brought an action of ejectment against Samuel H. Early and Edward Kenna to recover the land. Pending the suit all of the parties died and it was revived in the names of their heirs respectively. The defendants held separate parcels of the land, but their titles were in substance the same.

---

* He had been counsel in the cause below.

In June, 1856, a trial was had and a verdict found for defendant Early. The suit was then revived against the heirs of Kenna. A further trial was had as against these latter parties in June, 1858, and a verdict was rendered in favor of the plaintiffs and judgment given for them to recover certain boundaries according to the lines indicated in the plats in the case.

The questions which arose in progress of the trial were principally upon the face of the title papers introduced by both parties. The plaintiffs claimed under the patent granted to Beach and Norton, dated September 24th, 1795, under a survey made January 2d, 1795. The defendants claimed through a title derived from a patent granted to Robert James, Frederick Mollineaux and John Pollock, dated August 21st, 1800, for 93,026½ acres; which was made up of entries and surveys as follows: 65,026½ acres entered October 24th, 1794; 10,000 acres entered January 20th, 1795, and 18,000 acres entered January 20th, 1795; all of which were included in a certificate of survey dated May 22d, 1795. All of the entries were entered "exclusive of prior claims" and "to leave room for prior surveys and locations." The patent contained the following clause: "But it is understood that the survey upon which this grant is founded includes 40,000 acres of prior claims, (exclusive of the above quantity of 93,026½ acres), all of which having a preference by law to the warrants and rights upon which this grant is founded, liberty is reserved that the same shall be firm and valid, and may be carried into grant or grants, and this grant shall be no bar in either law or equity to the confirmation of the title or titles to the same as before mentioned and reserved, with its appurtenances." The defendants traced their title back to the James patent, and proved that their ancestor was in actual possession of the land in dispute on the 18th day of March, 1841, and that he had paid and discharged all taxes assessed and charged against him or that ought to have been charged against him. The record showed that the James grant and the Beach and Norton survey lapped and that the land claimed by the plaintiffs

covered the land claimed by the defendant, but it did not appear in the record which of the three of the James entries covered the land in the dispute.

No counsel appeared for the plaintiffs in error.

*B. H. Smith* for the defendants in error.

MAXWELL, J.　Quarrier's heirs were plaintiffs in an action of ejectment in the circuit court of Kanawha county to recover from Kenna's heirs a tract of 5,000 acres of land. The plaintiffs claimed title under a purchase made by their ancestor at a sale of delinquent and forfeited lands made in August, 1841.　They claim under a patent for 50,000 acres issued to Beach and Norton, on the 24th day of September, 1795, and forfeited in their names for the non-payment of taxes.　The entry bears date December 16th, 1794, and the survey January 2nd, 1795.

The defendants claim under a patent to James Mollineaux and Pollock for 93,026½ acres, bearing date August 21st, 1800, which includes 40,000 acres of prior claims, exclusive of the 93,026½ acres, and reserves liberty that the same shall be firm and valid and may be carried into grant or grants.　This grant is founded upon three entries which were consolidated, one of which was for 65,026½ acres, dated October 20th, 1794, and expressed to leave room for all prior surveys and locations; another was for 10,000 acres, dated January 20th, 1795, and expressed to leave room for prior claims, and the third for 18,000 acres, also dated January 20th, 1795, and expressed to be exclusive of prior claims.　The defendants showed themselves connected with the James grant; that their ancestor was in actual possession of the land in dispute on the 18th day of March, 1841, and that he had discharged all taxes duly assessed and charged against him, and all taxes that ought to have been assessed and charged thereon from the time he acquired his title thereto, by reason whereof they claimed that the right, title and interest vested in the commonwealth by the forfeiture of the Beach and Norton grant was transferred and vested

in them. The patent to James is what is known as an ex-clusive grant, and excludes 40,000 acres for prior claims. If the James grant did not exclude prior claims the defendants would have been in a situation to take a transfer of the commonwealth's title. It will be observed that one of the three entries on which the grant is founded, the one for 65,026½ acres is older than the entry on which the Beach and Norton grant is founded, while the other two are younger. The record shows that the James grant laps in the Beach and Norton patent, and that the land claimed by the plaintiffs covers the land claimed by the defendants. But the record does not disclose which of the three of the James entries covers the land in dispute, unless the statement made in the record that, it was claimed in argument by the plaintiffs' and not contested by the defendants' counsel, that the land in controversy was contained in the 18,000 acre entry, is to be taken as evidence. The James grant excludes prior claims, and for the purpose of discovering such claims reference must be had to the entries, and as the James entry for 65,026½ acres is older than the entry on which the Beach and Norton grant is founded no part of the 65,026½ acre entry is excluded, and it follows that if the defendants are within the last named entry they are in a situation to take the commonwealth's title. But the record does not show, only in the manner before mentioned, whether they are within it or not. Upon whom then did the burden rest of showing the situation of the defendants? Did it rest upon the plaintiffs to show that the defendants were excluded from the James grant or did it rest on the defendants to show that they were included within it? The act of 1841 vested the title in those who were in actual possession under claims or title derived from or under a grant. Those who would avail themselves of the act must bring themselves within it, and to bring themselves within it they must not only show possession but must also show it to be under title or claim derived from or under a grant of the commonwealth, and must, of course, show possession within the grant. As they failed to show their possession within the

grant they failed to make out their defense, and the court did not err in refusing a new trial to them.

The action was brought in the names of James Y. Quarrier and Monroe Quarrier against Samuel H. Early and Edward Kenna who appeared and entered jointly their plea of not guilty. The case was first tried as to Early and afterwards revived and tried against the heirs of Kenna. The petitioners now claim that it was error to have separate trials. If there had been any error in this there was no objection made to it in the court below and it is too late to raise it now for the first time.

From the whole case I am of opinion to affirm the judgment, with damages and costs to the defendants in error.

Berkshire, J., concurred.

JUDGMENT AFFIRMED.