# WHEELING.

### PIERPOINT *v.* THE TOWN OF HARRISVILLE.

#### July 21, 1876.

1. An injunction will lie to restrain a town, from opening streets through a person's land, without first condemning it according to law, when there has been no dedication of such streets to public use.

2. Where there has been no public use of a street, the owner may dedicate his land to the public for such use, by acts and declarations, without a deed.—But in such a case, these acts and declarations must be deliberate, unequivocal, and decided, manifesting a positive, and unmistakable, intention to permanently abandon his property to such public use.

1876.
June Term.

Appeal from, and *supersedeas* to, a decree of the circuit court of Ritchie county, rendered on the twenty-ninth day of December, 1873, dissolving an injunction in a suit then pending in said court; and, also, from a decree rendered on the first day of May, 1874, dismissing the bill in the same suit.

The complainant below, and the appellant here, was Z. M. Pierpoint, and the respondent and appellee, The Town of Harrisville.

The facts are fully set forth in the opinion of the Court.

The Hon. James M. Jackson, judge of said circuit court, presided at the hearing below.

*Scott & Cole* for the appellant.

*Robert S. Blair* for the appellee.

1876.
June Term.

Pierpoint
v.
Town of Harris-
ville.

GREEN, JUDGE :

In August, 1873, Z.M. Pierpoint applied to the Judge of the circuit court of Ritchie for an injunction to restrain the Town of Harrisville from opening streets in a three-acre lot, owned by the plaintiff, and which the town claimed had been dedicated to the public. The injunction was granted.

The pleadings and evidence show that, in 1843, Henry Rexroad conveyed a tract of thirty-one acres, in said county, to Daniel Rexroad. In 1845, having no title to the land, he presented to the county court of Ritchie a plot of a town, which he called Harrisville, with certain streets and alleys marked out on the plot, which town, so laid out, was principally, if not altogether, on this thirty-one acres, not then owned by him; and, on his motion, the said county court ordered said plot to be recorded. In 1847, Daniel Rexroad conveyed three acres, a part of this thirty-one acres, to. Francis Braddock, and after his death, in 1850, his heir conveyed it to Mary G. Braddock ; and she, in 1859, conveyed it to the plaintiff. On February 26, 1869, the Legislature passed an act incorporating the town of Harrisville. This act provided that the limits of said town should be : "The lots, streets, and alleys, as shown in the original plot of said town, together with the several additions that have been made, or that hereafter may be made, to the same." Within the limits of said plot, as made by Henry Rexroad, lies the whole, or greater part of, the three acres of land belonging to the plaintiff. The deeds from Daniel Rexroad to Francis Braddock, and from Mary G. Braddock to the plaintiff, describe this three acres of land as lying adjoining the town of Harrisville, while the deed to her describes it as in the town of Harrisville. Upon the plot made by Henry Rexroad, is marked out, in what is now this three-acre lot, a street running east and west, marked South street ; a street running north and south, called Cross street; and two alleys, one now

1876.
June Term.

Pierpoint
v.
Town of Harris-
ville.

called Cherry alley, the other Apple alley, both running north and south. Cherry alley was opened, some time before this suit was instituted, a short distance, as far as lot, marked on said plot, No. 7; the part opened runs alongside of lot No. 10 to the main street of said town, which runs east and west. On November 25, 1872, the plaintiff made a deed to George Cokely, conveying one-quarter acre, part of this three-acre tract, which one-quarter acre he describes as: "Known on the plot of said town as lot No. 7, and bounded as follows: Beginning at a stake, corner to lot No. 10, owned by John Hall, and on Cherry alley, thence south 8 poles, thence west 5 poles, thence north 8 poles, thence 5 poles to the Beginning." On May 6, 1873, the town council passed an order, requiring the plaintiff to open streets and alleys on this three-acre lot, and August 18, they passed a similar order, but, at plaintiff's instance, extending the time to September 18, 1873. On the twenty-fifth of August, 1873, the council, being offended at something the plaintiff said, rescinded this order, and passed another order, in these words: "Z. M. Pierpoint and T. F. Leach are hereby required to open South street, from Spring street to Apple alley, and all streets and alleys, not now opened, and leading from said South to Main street, within five days from date, and in the event they fail to open said streets and alleys, within the time prescribed, the sergeant of this town is hereby directed to open the same according to law." The sergeant notified him that, if not opened, the council would open them at his expense, according to law. The members of the council, under the advice of their attorney, claimed the right to open these streets forcibly, if necessary, and at his expense. The streets and alleys to be opened are on this three-acre lot. The plaintiff complained to the council while in session, and to others, of his being ordered to open these streets and alleys, and said he would open them as fast as he sold lots. He said to one witness, on the evennig of August 18, 1873: "It was very hard for any set of

men to force him to open South street at the present time." He complained to this witness of the expense he would be put to, having to make so much fence; he pointed out to him the stakes of George Cokely's lot,. which he said was on the town side of South street; he said he intended opening the street to the east side of Cokeley's lot, and also the alley running alongside of this lot. He said he would open streets and alleys as fast as he could sell lots. He pointed out where South street would run; said nothing about the right of the council to open it, but, before that, he had denied their right. These are the declarations most relied on by the appellee. There is much other evidence not bearing on the question in controversy. We have extracted from this mass of testimony all that is important. It is admitted that this three acres is part of a large field, all under one fence, which is farmed, and that this field lies contiguous to the plaintiff's mansion house.

On the twenty-ninth of December, on the hearing of a motion to dissolve the injunction, the judge dissolved the same; and on the hearing of the same, May 1, 1874, the court dismissed the bill, and decreed that the plaintiff pay to the defendant his costs.

The appellee insists that a court of equity ought not,. in such a case as the bill presented, to have interfered by injunction, but should have left the plaintiff to seek his redress, if he sustained damage, by a suit at law. Both upon principle and authority, if there never had been a dedication of these streets to the public, the plaintiff has a right to enjoin the town from opening these streets, till they have condemned the land, by regular proceedings according to law, and are not compelled to wait till the streets have been opened, and then seek redress by a suit at law,] for the damages he may have sustained. Such redress, at law, is utterly inadequate, and courts of equity have not hesitated, to give relief by injunction. *City of Lafayette v. Bush,* 19 Ind.,. 326; *Sower v. The City of Philadelphia,* 35 Pa. St., 231;

*United States v. Chicago,* 7 Howard, 185; *City of Rich-*
*mond v. Poe,* 24 Gratt., 149; *Clements v. The Village of*
*West Troy,* 16 Barb., 251; *Manchester Cotton Mills v.*
*Manchester,* 25 Gratt., 825.

It is insisted that the order of the council, directing the plaintiff to open these streets in five days, and if he failed to do so, directing the town sergeant to open these streets, accordingly, did not justify the plaintiff, in assuming they were to be opened contrary to law; but it is shown the council of the town, under the advice of their attorney, believed that they had a right to open these streets, forcibly, if necessary, and at the expense of the plaintiff, and the notice given the plaintiff states, that if not done, the town council will open them at his expense; and the town sergeant was about so to do, when the injunction was awarded. The defendant, too, in its answer, claims, that these streets had been dedicated by the plaintiff to the public. It is, therefore, absurd, now, to assume the position, that by this action of the town council, they only intended to condemn the land by legal proceedings.

Various other questions, such as the legal existence of the town, the regularity of the election of the town council, etc., have been raised, but they are foreign to the case, and unsustained by the evidence.

The only other question arising, really on the record is, had the plaintiff, or those under whom he claims, dedicated the streets and alleys to the public? The recording, by Henry Rexroad, of the plot, on which these streets and alleys were laid down, was certainly no dedication of them to the public, as at the time this was done, Henry Rexroad did not own the land, which was said to be dedicated to the public.—Some of the intermediate conveyances, between Rexroad and the plaintiff, speak of this three acres of land, as adjoining the town of Harrisville, and one of them speaks of it as in Harrisville; there is, in these deeds, no reference to the plot, nor does it appear that the grantors, in their deeds, had

· 1876.
June Term.

Pierpoint
v.
Town of Harris-
ville.
any knowledge of the existence of the plot: It was long before the town was incorporated, and by the town of Harrisville, we presume, the grantors meant the assemblage of houses, known by that name, and, having no defined bounds, the said three acres was said indifferently, to be adjoining, or in the town of Harrisville. This, certainly, was no dedication to the public of these streets and alleys.

It only remains to inquire, whether the plaintiff has done any act, or made any declarations, which amount to said dedication. In *Holdane v. Trustees of Village of Cold Spring*, 21 N. Y., 477, the court of appeals thus lay down the law: "Undoubtedly the owner of land may dedicate, or set apart, a street or highway, through it to the public use, and if the dedication be accepted, it will work an estoppel *in pais*, precluding the owner from asserting any right inconsistent with such use. The dedication and acceptance are to be proved, or disproved, by acts of the owner. Both are questions of intention. The owner's acts and declarations, should be *deliberate, unequivocal and decisive*, manifesting a positive, and unmistakable intention, to permanently abandon his property, to the specific public use. If they be equivocal, and do not clearly and plainly, indicate the intention to permanently abandon the property to the use of the public, they are insufficient to establish a case of dedication."

It is, in this case, seriously questioned whether an avenue opening into a highway, only at one end, can be dedicated to the public. It is certainly a strong circumstance to rebut any presumption of dedication, on account of its uselessness to the public. This circumstance exists in this case. And Selden, Judge, protested against any inference being drawn from the opinion, that a dedication can take effect without some public body to take. If this be so it would exclude all consideration of any acts prior to 1869, when the town of Harrisville was incorporated. But, in truth, there were no acts, prior

thereto, that could possibly be construed into a dedication of these streets and alleys. The acts and declarations held necessary in other cases, are of the same decisive character as are pointed out as necessary in this case, in *Holdane v. Village of Cold Spring, supra; Clements v. Village of West Troy, supra; City of Richmond v. Poe, supra; Manchester Cotton Mills v. Town of Manchester, supra,* 825. If there has been no use by the public, we may safely adopt the language of the Court of Appeals of New York, strong as it is, as laying down correctly, the law in such case. It is obvious that the declarations and acts of the plaintiff were not " deliberate, unequivocal, and decisive, manifesting a positive, an unmistakable intention to abandon his property to public use." The deed to Cokely was clearly no such act; on the contrary, the fair deduction to be drawn from this deed is just the reverse. It is true it calls for a point in Cherry alley as one of the corners, and this alley is now open from that point to the main streets. But, though the first line of this lot of Cokely bounds on the portion of said alley not open, the deed makes no mention of its running with this alley, as if to preclude the idea that this unopened portion of the alley was recognized as a public alley. The second line of this Cokely deed runs, its whole length, along what is called South street, but the deed carefully avoids calling for it as running with South street, thus avoiding any recognition of South street as a public street. The case would have been essentially changed had this deed referred to the recorded map, and described the lot as bounded on the east by Cherry alley, and south by South street, which is a correct description. If such had been the description of this lot in this deed, the cases relied on by the appellee of *Livingston v. Mayor of New York;* 8 Wend. 85; *Wyman v. same;* 11 Wend. 486, and *Wiggins v. M'Cleary,* 49 N. Y. 346, would have an application.

We are, therefore, of the opinion that there has been

no dedication to the public, of the streets and alleys, proposed to be opened by the town of Harrisville; and that the order made by the Judge of the circuit court of Ritchie, on the twenty-ninth day of December, 1873, dissolving the injunction, as well as the decree made the first day of May, 1874, dismissing the bill, and decreeing that the defendants recover of the plaintiffs its costs, were erroneous, and should be reversed and annulled, with costs to the appellant. The following decree was entered in this Court:

And this Court proceeding to enter such order, as the court below ought to have done, doth adjudge, order and decree, that the injunction awarded in this cause, by the Judge of the circuit court of Ritchie, be and the same is, hereby perpetuated, till such time as the Town of Harrisville shall acquire the legal right to open such streets and alleys through the three acre lot of the plaintiff, in the bill mentioned, in the manner prescribed by law; and that the defendant, the Town of Harrisville, pay to the plaintiff his costs expended in this cause, in the circuit Court of Ritchie.

Haymond, President, and Moore, Judge, concurred.

Edmiston, Judge, absent.

DECREE REVERSED AND INJUNCTION PERPETU-
ATED.