# CHARLESTOWN.

## Flynn *v*. Lee.

*(Green, Judge, absent.)

Submitted June 9, 1888.—Decided September 15, 1888.

1. Possession—Adverse Possession—What Constitutes.

An adverse possession depends upon the intention with which the possession was taken and held. Wherever the act itself imports that there is a superior title in another, by whose permission, and in subordination to whose still continuing and subsisting title, the possession is held, such possession can not be adverse to the owner of the legal title.

2. Possession—Adverse Possession—Mortgage—Deed Absolute —Statute of Limitations—Notice.

Where a vendor conveys land by deed, which, though absolute on its face, is in fact a mere trust or mortgage, and he continues in possession after the conveyance, such possession will not be adverse to the title of the vendee. To make such possession adverse, and start the running of the statute of limitations, there must be a disclaimer or repudiation of the trust-relation, and notice of that fact to the vendee.

*R. S. Blair* for plaintiff in error.

*George Loomis* for defendant in error.

Snyder, Judge :

John Flynn, by deed dated September 24, 1858, conveyed with covenant of general warranty, to John and Edward Reid as tenants in common, certain land lying in Ritchie and Doddridge counties. By deed dated December 6, 1875, said John Reid and wife conveyed all their interest in said land to the said Edward Reid. These two deeds were duly recorded in Ritchie county in December, 1875. Subsequently, by deed dated January 11, 1876, and duly recorded in said county, July 5, 1876, the said Edward Reid and wife conveyed to E. C. C. Lee, with general warranty, a boundary of 157 acres, part of the aforesaid land. At the time of his purchase Lee was placed in possession of the 157 acres of land, made valuable improvements thereon, and has continued in the actual and open possession thereof ever since his said purchase. John

*On account of illness.

Flynn died intestate in the year 1861, leaving Ann V. Flynn and several children. In May, 1883, the said widow and children of John Flynn, deceased, commenced this action of ejectment against E. C. C. Lee, to recover from him the said 157 acres of land, claiming title thereto in fee. The defendant pleaded not guilty, and the case was twice tried by jury, and upon each trial there was a verdict for the plaintiffs. The first verdict, returned March 11, 1884, found that all the plaintiffs were entitled to the land in fee; while the second verdict, returned March 5, 1886, found that the widow, A. V. Flynn, was entitled to one-third of the land for life, and the other plaintiffs to the fee, subject to said life-estate. These two verdicts were each, on the several motions of the defendant, set aside, and new trials ordered. The plaintiffs duly excepted to the action of the court, and on their motion the court, by bills of exceptions, certified all the evidence heard upon each separate trial. The plaintiffs obtained this writ of error, and claim that the court erred in setting aside both or either of said verdicts.

The evidence tends to prove that at the time John Flynn conveyed the land to John and Edward Reid, in the year 1858, Flynn was indebted to said Reids, and that the deed then made, while absolute and unconditional on its face, was, according to the understanding and agreement of the parties, simply a trust-deed or mortgage. The Reids were to hold the title as a security for the indebtedness of Flynn to them; and, upon the request of Flynn and the payment of said indebtedness, the Reids were to convey the land back to Flynn or to his wife and children. These facts fully appear from the letters of the Reids written to some of the plaintiffs after the death of Flynn.

The evidence further tends to prove that, in the latter part of the year 1875, the plaintiffs were anxious to pay off the claim held by the Reids, and redeem the land; that, at the instance of some of the plaintiffs, the defendant, Lee, was induced to make an agreement with Edward Reid, who then held the title to the land, for the purchase of about 150 acres of the land; that after this agreement the Flynns seem to have made some objection to the survey and quantity of land sold to Lee; but Reid, claiming that he was

bound by his agreement to let Lee have the 157 acres of land at the price agreed upon, which was $1,099, in consideration of said sum conveyed the land to Lee by the aforesaid deed of January 11, 1876, retaining a lien in the deed for the deferred payments of the purchase-money, a part of which did not become due until January, 1878. The Reids never had the actual possession of any part of the land. John Flynn retained the possession to the time of his death, and since then the plaintiffs have continued in the possession of all the land, except that the 157 acres has been in the actual and exclusive possession of the defendant, Lee, since 1876, the date of his purchase.

Upon these facts the plaintiffs in error claim that the possession of themselves and their ancestor had been adverse to the Reids from 1858 to 1876, the date of the sale to Lee ; and, as this possession had so continued for more than 10 years, the title of the Reids had become barred, and by operation of the statute of limitations transferred and vested in the plaintiffs in error before 1876, the time the defendant obtained possession under his deed from Reid. This claim is wholly untenable, for the plain reason that the possession of neither the plaintiffs in error nor their ancestor was at any time adverse to that of the Reids.

An adverse possession depends upon the intention with which the possession was taken and held. Whenever the act itself imports that there is a superior title in another, by whose permission, and in subordination to whose still continuing and subsisting title, the entry is made, such entry cannot be adverse to the owner of the legal title ; and such possession so commencing cannot be converted into an adverse possession, except by disclaimer, the assertion of an adverse title, and notice to the owner of the legal title. *Clarke* v. *McClure*, 10 Grat. 305; Tyler Ej. 927.

In the case before us the testimony of the plaintiffs in error shows that the conveyance to the Reids was intended and understood by the parties thereto as a mere trust or mortgage ; that the equitable ownership subject to the trust was to remain in Flynn, the grantor; and that, according to the same understanding and as a necessary result of it, the grantor was to remain in the possession and take the usu-

fruct of the land until the title was redeemed or the trust repudiated, and notice given of that fact. Instead of any such notice having been given, all the parties in interest continued to recognize the trust up to the time and long after the sale to the defendant, Lee.

There is therefore no foundation for the claim that either the plaintiffs in error or their ancestor ever had or claimed to have any possession adverse to the Reids. Their possession not only began in recognition and in subordination of the legal title in the Reids, but it so continued up to the institution of this action. In fact, the only foundation for the claim of the plaintiff in error is that the deed of 1858 to the Reids was a mortgage or trust, and that they are entitled to recover by reason of the fact that the deed is of that character. The relation of the parties, according to the claim of the plaintiffs in error, is, and always has been, that of trustee and *cestuis que trust;* and it requires no argument or citation of authority to show that the question of adverse possession has no place or relevancy where such relation exists between the parties.

Such being the relation of the parties, and the condition of the title at the time the defendant, Lee, made his purchase, the deed from Edward Reid to him conferred upon him a valid legal title. If Reid violated his trust by selling and conveying the land to Lee, the plaintiffs should have sought redress in a court of equity by promptly instituting their suit to prevent the conveyance, or to enjoin the payment of the purchase-money to Reid. It is certain they have shown no right to recover against the defendant, Lee, in this action, and that therefore the court did not err in setting aside the verdicts of the jury, or either of them.

In the deed of 1858, from John Flynn to the Reids, the certificate of acknowledgment of Ann V. Flynn, the wife of the said Flynn, and one of the plaintiffs in this action, is clearly defective and inoperative. It is therefore claimed by the plaintiffs in error that the second verdict of the jury, as to the finding that Mrs. Flynn had a life-estate in one-third of the land, should not have been set aside. The said deed was made during the life of the husband, and in such case our statute gives the alienee the option to pay the

widow, in lieu of her dower, the interest on its value or a gross sum. Chapter 65, § 12, Code. According to this statute, the wife has no absolute right to dower in kind, but only a conditional right, dependent upon the election of the alienee of the land. If this had been an action by the widow alone, then, in the absence of any showing that the alienee had elected to compensate her as provided in the statute, she might have been entitled to recover her dower in kind, but, having united her fortune with others not so entitled, the court did not err in setting aside the verdict as to her also. Of course, the failure of the wife to recover in this action will not bar her right to recover dower in a separate action, if she can show that she is entitled to dower in kind in this land, or any part of it.

For the reasons aforesaid the judgment of the Circuit Court is affirmed.

AFFIRMED.