# CHARLESTON.

### TAYLOR v. PHILIPPI.

Submitted June 15, 1891.—Decided November 14, 1891.

1. DEDICATION—ACCEPTANCE—ADVERSE POSSESSION—EVIDENCE.

    W., being the owner of the land, surveyed, laid out and platted the same into lots, streets and alleys, as and for a town, made a map thereof, and sold the lots with reference to said map, and as designated and numbered thereon; such map being afterwards duly admitted to record, and the town as laid out being established and named by act of the legislature. *Held*, such acts and conduct on the part of such owner constitute *prima facie* evidence of the intent on his part to dedicate such streets to public use.

2. DEDICATION.

    An acceptance of such dedication must be by the proper local authorities, but may be implied as well as express; such as the recognition or naming of it as a street of the town by ordinance of the town-council, or by any actual appropriation of the property for the use designed.

3. DEDICATION—ADVERSE POSSESSION.

    One who claims to own and hold a definite part of such street must prove an adversary possession thereof for ten years, the period prescribed by the law of this State; such adversary possession being made up of all the essential elements.

4. DEDICATION.

    A case in which, these principles being applied, it is *held* that the street in question had been dedicated and accepted, and the adverse claimant had failed to make good his adverse claim.

*Dayton & Dayton* and *M. Peck* for appellants, cited 8 Pac. Rep. 392; 33 W. Va. 507; 24 Gratt. 149; 32 W. Va. 6; 27 N. W. Rep. 159; 81 Cal. 70; 16 At. Rep. 631; 20 Pac. Rep. 817; 9 W. Va. 215; 15 W. Va. 394; 52 Hun 206; 30 W. Va. 606; 12 S. W. Rep. 462; 11 Pac. Rep. 746; 13 Pac. Rep. 141; 11 N. E. Rep. 484; 23 W. Va. 211; 72 Tex. 422.

*W. T. Ice* for appellee, cited 2 Dill Mun. Corp. (2d Ed.) § 640 and note, §§ 630, 631, 636; 30 W. Va. 617; 9 W. Va. 215; 15 W. Va. 399; 4 Am. St. Rep. 599; Acts of Va.

(1843-4) p. 99; 29 Gratt. 781; Id. 794; 1 Dill Mun. Corp. § 457; 29 Gratt. 534; 5 Am. St. Rep. 830; 12 W. Va. 69; 84 Va. 337; 2 Dill. Mun. Corp. § 528.

HOLT, JUDGE:

This was a suit in equity, brought on the 15th day of February, 1890, in the Circuit Court of Barbour county, by A. L. and B. F. Taylor, plaintiffs below, against the town of Philippi, to enjoin and restrain the town from opening a part of the street called "Church Street." The injunction was granted in vacation, perfected by bond given, the bill was filed, defendant answered, plaintiffs replied generally, and the depositions of various witnesses were taken. The cause came on to be heard on June 2, 1890, on defendant's motion to dissolve the injunction; and the court, being of the opinion that the case was for defendant dissolved the injunction and dismissed the bill; and plaintiffs have brought the case here on appeal. It involves the question of the right to what is claimed by the town to be a part of one of its streets.

A street is a road or way over land set apart for public use and travel in a city, town or village; and, as the way is common and free to all the people, it is a highway. See Elliott, Roads & S., 12; also, Bouv. Law Dict.

If there had been no dedication of this street to the public, or if from continued adversary possession or other cause it had become the property of defendant, the injunction was proper to restrain the town from opening the street; for damages in a suit at law would have been inadequate, and the injury would in this case have been irreparable. *Boughner* v. *Town of Clarksburg,* 15 W. Va. 394; *Pierpoint* v. *Town of Harrisville,* 9 W. Va. 215; *Mining Co.* v. *Town of Mason,* 23 W. Va. 211.

Where there has been no public use of a street, the owner may dedicate his land to the public, for such, by acts and declarations without a deed; but where the town claims that the street has been by the acts and declarations of the owner dedicated to the public for that purpose, such acts and declarations must be deliberate and decisive, manifesting a positive and unmistakable intention to perma-

nently abandon his property for that specific public use. *Miller* v. *Aracoma*, 30 W. Va. 606 (5 S. E. Rep. 148) ; *Pierpoint* v. *Town of Harrisville*, 9 W. Va. 215.

The acceptance of such dedication must be by the proper local authorities, but may be implied as well as express, as indicated by any actual appropriation of the property for the use designed. *Cass Co.* v. *Banks*, 44 Mich. 467 (7 N. W. Rep. 49). But if the plaintiffs have held such part of the street·in actual possession, in such a way and for such a length of time as would bar the better right in an action of ejectment, their title to the land is good, to maintain a suit as well as to defend; for the statute of limitations in the absence of an express provision to the contrary runs against a municipal corporation the same as against a natural person. *City of Wheeling* v. *Campbell*, 12 W. Va. 36. And now, by express provision, it runs also against the State. Section 20, chapter 35, Code. These are in the main the legal doctrines involved in the case.

The legislature of Virginia, by act of 3d of March, 1843, created the county of Barbour out of the counties of Harrison, Lewis and Randolph, fixing the seat of justice "on the eastern side of Valley river at or near the ferry of Thomas M. Hite on the farm now occupied by Wm. F. Wilson." Acts of Assembly Va. 1842–43, p. 37. Afterwards, in the same year (1843) William F. Wilson, then the owner of the land mentioned in the act, surveyed, laid out, platted and numbered and designated on a map certain lots, streets and alleys, and by this plan or map sold to various purchasers various lots, and among them the two lots mentioned in the bill, Nos. 72 and 73, and by deed dated January 21, 1850, conveyed these two lots to Moses M. Hoff, describing them as two certain lots of land in the town of Philippi, known as the lots Nos. 72 and 73, as designated in the plan of said town. On this plan the street in controversy now known as "Church Street" was laid down as extending between lot 73 and 74; the latter now called the "Surghner Lot." The General Assembly of Virginia, by act passed February 14, 1844, established the land thus laid off into lots, streets, and alleys as a town by the name of "Philippi," appointing trustees, providing

for its government, and its further extension into lots, streets, and alleys. Act of Assembly Va. 1843-44, p. 99.

At some time—it does not appear in this case when—this map was admitted to record in the clerk's office of the County Court of Barbour county in the Miscellaneous Order Book No. 1, p. 44, and on July 11, 1873, was recorded in such office in Deed Book No. 6, p. 594. The original map is produced as evidence in this cause, and proved by a son of the original owner, who also helped to lay off the lots and streets, who further proves that at the time the town was laid off, and the lots sold as numbered and designated on this map, Church street, running up the hill from High, and separating lot 73 from lot 74, was left open by William F. Wilson, his father, for the use of the town, as well as the rest of the street from Main street to High street. Town ordinance No. 9, in evidence, but without any date of enactment, among other things says:

"The street running from Main street by way of the M. E. Church to High street shall be called and known as 'Church street.' * * * All other streets, alleys, and ways not herein mentioned, their location, alternations, and changes shall be and remain until otherwise changed as the same now are, as described and shown by the plats of Philippi, of record in the clerk's office of the County Court of Barbour county in Miscellaneous Order Book No. 1, p. 44, and in Deed Book No. 6, p. 594, and the orders, resolutions, and ordinances of Philippi heretofore passed, and of record in manuscript in the journal of the common council."

The town council, by order made in 1871, permitted one James A. Grant to build a fence across that part of Church street. Grant was owner of the two lots from 1858 to 1873, and obtained permission of the town council to close Church street between lots 73 and 74; stock was turned into this street or alley, and he obtained such permission to prevent trespass on his lots without building a fence along lot 73; but at no time did he own, or claim to own, the street lying between lots 73 and 74: and, while he was owner of the two lots, never used or exercised any ownership over that portion of Church street except by permis-

sion of the corporate authorities of the town of Philippi; and that when he sold the land to Isaac V. Johnson he never sold or attempted to pass to Mr. Johnson any claim or title to that portion of Church street. I. H. Strickler had conveyed these two lots to Grant by deed dated April 13, 1872, and Grant had conveyed them to I. V. Johnson by deed dated September 8, 1873. Johnson conveyed them to W. W. Corder by deed dated July 4, 1876. Corder conveyed them to Joseph A. Roe by deed dated August 1, 1876. Roe conveyed them to Spencer Glasscock by deed dated 23d September, 1876. Spencer Glasscock conveyed them to J. L. Glasscock, trustee, by deed the date of which does not appear. Glasscock, trustee, and others sold the same to Judge Samuel Woods on 12th of April, 1882, who owned them, and by his successive tenants, George P. Sargent, Wills, and Lewis Simons, had them in possession down to the 4th of April, 1887, when, through his agent and son, Samuel V. Woods, he sold them to plaintiffs, and put them in possession. This contract of sale describes them as "the house and two lots of ground on High street, in the town of Philippi, which was conveyed by Jacob L. Glasscock, trustee, to Samuel Woods, by deed duly recorded in Barbour county."

Isaac V. Johnson, a former owner of these two lots, knows them well. He knows the handwriting of William F. Wilson proves the original map, and Church street as there laid down, running from Main street by various lots, all numbered, to and across Walnut street; thence between lots 36 and 37 to High street; thence between lots Nos. 73 and 74, and on between lots 92 and 93 to the end. He also proves that the part of Church street between lots 73 and 74 was open back in the 50's, while William F. Wilson was still alive; Wilson died between 1856 and 1860. Witness bought from Grant, and knew that Grant closed the street pursuant to the consent of the council; and he (Johnson) neither bought, claimed to own, nor sold any part of the street.

How Corder, Roe, and Glasscock claimed to hold this part of Church street from 4th April, 1876, to 12th April, 1882, does not appear; but Judge Woods became the owner of these lots by conveyance from the Glasscocks on 12th

day of April, 1882, and on that day took actual possession of them through his tenant, George P. Sargent. When Sargent thus went into possession under Judge Woods, there was no fence along High street in front of these lots, and none across Church street—a street that he had known since the 15th day of November, 1848. Sargent while such tenant, built the fence that is now there, running it across Church street; but Judge Woods "never supposed that he had any right or title to that portion of Church street involved in this controversy," "never claimed any portion of said street during the time he owned it, and never sold it to plaintiffs, or authorized his son to do so;" nor is it mentioned or embraced in the description of the property contained in his contract of sale dated 4th April, 1887.

The lots have not yet been conveyed. S. V. Woods sold the lots to plaintiffs, as agent for his father, and says in his deposition: "My recollection now is that I was careful to call Mr. Taylor's attention to the fact that the street inclosed with these lots was not owned or claimed by my father; and, if I am not mistaken, I pointed out to Mr. Taylor the old fence posts standing by the side of the stump of an old locust tree on the line of the street next to one of the lots. I am sure I talked to Mr. A. L. Taylor about whether he could not manage to get permission to keep that piece of ground in exchange for another piece which we thought could be utilized as a street on the opposite end of the lots. And I think I told him that, if I were the owner of the lots I would begin to make adverse claim to all the ground inclosed within the fences."

The lots and the street were then fenced so as to appear as one parcel of ground, and the plaintiffs did afterwards apply to the town council to see if the exchange could be effected.

Do the plaintiffs show such adversary possession as bars the better right? They claim it, and for a period of nineteen years. They show no colorable claim of title by any writing or by any act emanating from another; but they do show inclosure of the whole land in dispute, with actual occupancy under claim of absolute ownership. What

are the elements of an adversary possession in reference to conflicting claims and the statutory bar?

(1) An adversary possession must be actual, as contrasted with constructive, possession; that is, such as is the incident of the true legal title when there is nothing to qualify or break its force. It is absolute dominion, evidenced by visible use and enjoyment, in whole or in part, as the case may be; an evidence of ownership which the land itself exhibits to any one who sees fit to look and inquire for himself. I do not know that such possession needs to be notorious in any other sense.

(2) It must be adverse; that is, he must hold for himself, and against all the world. I see no reason why the true owner in fact may not have adverse possession.

(3) It must be exclusive. He must either turn out or shut out other claimants.

(4) It must be uninterrupted and continuous; neither broken by another, nor abandoned by himself.

(5) It must be honest, or "*bona fide*," as it is called. This does not mean that he must be ignorant of a better title, or believe his own to be good or the best, but that his holding for himself shall involve no breach of faith or of any such duty he may owe to another.

(6) He must hold for the period (in this State, ten years) prescribed by the statute, under some colorable claim of title, which must be derived from another if his possession is to extend beyond his inclosure, but need not be so derived when it is all visibly inclosed.

We have many cases which discuss the doctrine of adversary possession. Among them: *Taylor's Devisees* v. *Burnsides,* 1 Gratt. 165; *Overton's Heirs* v. *Davisson,* Id. 211; *Shanks* v. *Lancaster,* 5 Gratt. 110; *Pasley* v. *English,* Id. 141; *Evans* v. *Spurgin,* 6 Gratt. 107; *Hannon* v. *Hannah,* 9 Gratt. 146; *Creigh* v. *Henson,* 10 Gratt. 231; *Clarke* v. *McClure,* Id. 305; *Anderson* v. *Harvey,* Id. 386; *Staats* v. *Board,* Id. 400; *Flanagan* v. *Grimmet,* Id. 421; *Smith* v. *Chapman,* Id. 445; *Koiner* v. *Rankin,* 11 Gratt. 420; *Caperton* v. *Gregory,* Id. 505; *Levasser* v. *Washburn,* Id. 572; *Kincheloe* v. *Tracewells,* Id. 587; *Erskin* v. *North,* 14 Gratt. 60; *Genin* v. *Ingersoll,* 2 W. Va. 558; *Kenna's Heirs* v.

*Quarrier Heirs,* 3 W. Va. 210; *Pitzer* v. *Burns,* 7 W. Va. 63: *Western Mining etc. Co.* v. *Peytona Cannel Coal Co.,* 8 W. Va. 406; *Moore* v. *Douglass,* 14 W. Va. 708; *Duff* v. *Good,* 24 W. Va. 683; *Lynch* v. *Andrews,* 25 W. Va. 751; *Jones* v. *Lemon,* 26 W. Va. 630; *Hall* v. *Hall,* 27 W. Va. 468; *Oney* v. *Clendenin,* 28 W. Va. 34; *Congrove* v. *Burdett,* Id. 220; *Flynn* v. *Lee,* 31 W. Va. 487 (7 S. E. Rep. 430); *Ketchum* v. *Spurlock,* 34 W. Va. 597 (12 S. E. Rep. 832.)

In conclusion, we think it has been clearly shown on the part of the town of Philippi (1) that William F. Wilson, while the owner of the land in controversy, dedicated it to the public to be used as a street, by acts and conduct, deliberate, unequivocal and decisive; thus manifesting a positive and unmistakable intention to abandon permanently his property for that specific public use; (2) that the public, by the proper local authorities, have recognized and accepted this strip of land as a street by the appropriation, and attempted appropriation of the property for the use designed.

What have plaintiff's shown in bar or preclusion of the defendant's right? It is hardly necessary to point out that they have wholly failed to make out a good title by adversary possession; failing to show, perhaps, any one of the essential elements. From the spring of 1869 down to the 4th of April, 1887, the owners of the lots had no claim, and set up none, to the street and fenced, and used the same by permission of the town authorities, and in subordination to their right. At best, these parties, whatever the nature of their possession and claim may be, have owned and occupied the property only since the 4th or 12th of April, 1887; whereas our laws require ten years to bar the public's right to use it as a street. Therefore the decree complained of must be affirmed.

AFFIRMED.