## CITY OF VICKSBURG v. THOMAS A. MARSHALL.

1. STREETS IN CITIES. *Dedication.   Survey and sales of lots.*

    The survey and sales of lots, with reference to streets in a tract of land adjoining a city, which is laid off into squares and streets by the owner for this purpose, is a dedication of the streets as described in the plat, which purchasers of the lots, according to that description, cannot controvert, although the plat is not enrolled until after the sales.

2. SAME.   *Adverse possession.   Abutting lots.*

    Streets in a city are held by the corporation in trust for the public; and adverse possession by an abutting lot owner cannot bar the city's right to open them for the public use.   Dillon Mun. Corp. § 675.

3. SAME.   *Municipal officers.   Authority to bind corporation.*

    A street commissioner without authority cannot, in virtue of his office, adopt, by agreement with the owner of a lot, a conventional line as the boundary of a street upon which the lot abuts.

4. SAME.   *Vicksburg.   Washington street.*

    The direction of Washington Street, south of Veto Street in the city of Vicksburg, is south seven degrees west, and the line which has been recognized on the faith of former surveys, as the true boundary by persons building on the street, will not be altered upon the authority of a subsequent survey, in an individual case.

APPEAL from the Chancery Court of Warren County.

Hon. UPTON M. YOUNG, Chancellor, did not preside in this case, but Counsellor THOMAS CATCHINGS acted as Chancellor, *pro hac vice.*

Wm. M. Pinckard purchased from Wm. Vick seventy-six acres of land bounded by a line beginning at a post on the bank of the Mississippi River, and intersected by the Warrenton Road which began at the southern end of Washington Street in the city of Vicksburg.   Having the tract laid off into streets, squares and lots, he called it "Pinckardia," and put the lots upon the market.   On May 11, 1836, he conveyed square 29 to N. H. Rapplege, through whom and several intermediate vendees lots 200, 201, 206 and 207, on which a fence was built and residence erected by Rapplege, passed in 1838 to John P. Coffin.   On February 26, 1840, the "Plat of Pinckardia," was recorded in a deed-book in the office of the Probate Clerk of Warren County.

On the opposite page is a part of the " Plat of Pinckardia " with details added from subsequent surveys; for instance, the width of Washington Street, the old Warrenton Road, south of Veto Street, is given on the original plat as sixty-six feet and its course is omitted, while, on this map, the breadth is fixed at sixty feet and the deflection noted as seven degrees westward. The map does not include the river on which the western squares do not border, but two or three blocks .intervene. The position of the old city with reference to Pinckardia is indicated by the word " Vicksburg."

On March 12, 1850, the four lots were conveyed by De Wolf and Lee, sub-vendees under Coffin, to the appellee, who has mortgaged them five times during a period of thirty years, always using the " Pinckardia " description by which the property was conveyed to him and once describing it as bounded by Washington, Warren and Mulberry Streets, and once as fronting on the west side of Washington Street. When the appellee purchased, he removed the fence eastward to the bottom of the hill which comprises the property, handsomely terraced the grounds, and adorned them with shrubbery and rare plants, making it one of the loveliest spots among the hills of Vicksburg.

In the summer of 1879, while the appellee was at a watering-place, the city of Vicksburg, having induced the Vicksburg and Meridian Railroad Company to built a culvert, and graded the street over the track, was proceeding to straighten the pavement by digging down part of the improvements, when his agent enjoined the workmen upon the allegations of ownership by deed and by prescription. The street commissioner in charge of the work then compromised the matter with the agent, agreeing to cut only a portion of the hill; which was done, and the appellee built the brick wall X N Y shown on the map. The city did not ratify this settlement, but insisted upon cutting away part of the wall and hill and improvements to straighten the street as indicated on the map, leaving a precipice before the appellee's residence, in place of his landing N and ZZ his handsome steps; and the appellee filed a supplemental bill setting up the settlement in addition to the other reasons for injunction.

Many surveys have been made to ascertain the bearing of Washington Street south of Veto Street, and they fixed the dotted line on the map at lots 206 and 207 as its western side; but for the purposes of the city in this controversy T. G. Dabney, a civil engineer, resurveyed the street. Beginning at Brungard's Corner, the southeast corner of Main and Monroe Streets, which is a recognized initial point for surveys of Vicksburg, he established a base line at the intersection of Cherry and South Streets, and ran a line down the latter into Pinckardia. Commencing at the southwest corner of South and Washington Streets in Pinckardia, and running south to the northern line of Veto Street, the surveyor ran from the latter point to a corner beyond square 29, a straight line, S. 7° W., and this line is his ascertained western boundary of Washington street next the square. At the point x it is $2\frac{25}{100}$ feet west of the line found by surveyors who started from other points than Brungard's Corner, and at the point y it is $2\frac{47}{100}$ feet west of such line. There are two deeds to parts of Pinckardia executed in October and December, 1836, one of them by Wm. M. Pinckard, which, in describing the boundaries of lots conveyed, use the expressions " on the western border of Washington Street running South 7° West," and " on the east side of Washington Street North 7° East," and the data from these deeds governed this survey. If, however, the western line of the street is run according to Dabney's survey, it will take property and improvements now occupied by many proprietors upon this side of the street.

The appellant answered the bills, setting up that, as early as 1842, Pinckardia, with its streets as dedicated by Pinckard, was incorporated by charter into the city of Vicksburg, and that by ordinance the workmen were grading and straightening Washington Street, which from the Warrenton Road had become the chief thoroughfare of the city, that the appellee's deed was for the lots only and not the street, that he could acquire no right to the public way by adverse possession, that his improvements built on his own land would not be injured but rendered more valuable by grading and straightening the street, that the precipice could be converted into an ornament by the exercise of taste and ingenuity, and that the city was not

to be prevented by the inconsiderate and unauthorized act or contract of a street commissioner from conferring these benefits upon the appellee and the public at large.

At the final hearing, upon all the evidence, the injunction was made perpetual.

*G. Gordon Adam*, for the appellant.

1. No surveyor would look for a stake which was planted in the mud of the Mississippi swamp fifty years ago, but taking a recognized initial point for surveys of Vicksburg, like Brungard's Corner, he would proceed in the light shed by old muniments of title and plats to find the required line. Washington Street in Pinckardia is only a continuation southward of the street of the same name in the old city with a deflection beginning at Veto Street of seven degrees to the west. Builders do not employ surveyors to locate the houses which they erect, and hence upon this, as on every other street, some of the structures jut over and some fall short of the lines. No compromise was made; and, if it was, the appellee by putting his brick wall and landing and steps east of the line violated the settlement. When the culvert was made and the street graded over the railroad, it became necessary to remove the obstructions to the south in order to straighten the sidewalks. Building his fence in the street gave the appellee no title; and the forbearance of the city in permitting this until the public needed the thoroughfare conferred on him no right. The wide, level, and handsome street will enhance the value of this property and greatly benefit the public.

2. This street was dedicated to public uses by Pinckard, when he laid out Pinckardia and sold the lots. The city charter as early as 1842 had been repeatedly amended so as to include Pinckardia with its streets, and the city became trustee for the public. Pinckard's plat was recorded before the appellee acquired his title, and all conveyances and mortgages of the lots use the description of this plat. The two old deeds do not bind the appellee, but they show the bearing of Washington Street on which his lots abut, and the eastern line of his property is the western boundary of the street. It is not essential to a dedication that the legal title should pass from the owner, or that there should be any grantee of the use or

easement *in esse* to take the fee. No deed or writing is necessary. Where a plat is made and recorded, the requisite intention of the owner to dedicate is generally indisputable. As against the proprietor, a dedication of land for streets and highways may be complete without any act, or acceptance, on the part of the public. Dillon Mun. Corp. §§ 494–499,. 505; *Vick* v. *Vicksburg*, 1 How. 379, 427; *Cincinnati* v. *White*, 6 Peters, 431.

3. Building a fence, a sidewalk, or terraces or steps on a street by the owner of abutting lots, does not create adverse possession, and whatever consequential damage may be caused by the removal of such structures is *damnum absque injuria.* The use by the public, soon after the first dedication, of only a small portion of a street, and delaying the grading of the other part for a long period, does not create any adverse possession in the owner of the lots fronting the latter portion, nor affect the right of the city to grade the street. *Cross* v. *Morristown*, 18 N. J. Eq. 305; *Callender* v. *Marsh*, 1 Pick. 418, 431; *Radcliff* v. *Brooklyn*, 4 N. Y. 195, 198–207; *Smith* v. *Washington*, 20 How. (U. S.) 135, 149; *Rome* v. *Omberg*, 28 Ga. 46; *St. Louis* v. *Gurno*, 12 Mo. 414, 422; *Taylor* v. *St. Louis*, 14 Mo. 20; *Roberts* v. *Chicago*, 26 Ill. 249, 251; *Snyder* v. *Rockport*, 6 Ind. 237, 240, 241; *Keasy* v. *Louisville*, 4 Dana, 154, 156, 157; Dillon Mun. Corp. §§ 533, 783. Use for travel is not necessary. *White* v. *Yazoo City*, 27 Miss. 357; *Briel* v. *Natchez*, 48 Miss. 423; *Sanford* v. *Meridian*, 52 Miss. 383; *Kinnare* v. *Gregory*, 55 Miss. 612; *Simmons* v. *Cornell*, 1 R. I. 519.

4. The agents, officers, or even the mayor and aldermen of a municipal corporation, cannot bind the corporation by any contract which is beyond the scope of its powers. Dillon Mun. Corp. §§ 383, 518. An implied promise cannot be raised against a municipal corporation, where by its charter it can only contract in a prescribed way, except it be a promise for money received or property appropriated under the contract. Dillon Mun. Corp. § 383; *Methodist Episcopal Church* v. *Vicksburg*, 50 Miss. 601. On contracts relating to matters wholly outside of the legal powers of a municipal corporation, it is not estopped to make this defence.

*H. F. Simrall*, for the appellee.

1. Numerous surveys have left in doubt the western boundary of Washington Street in front of the appellee's property. The point at which the original survey of Pinckardia began, marked by a stake on the river bank, cannot be ascertained, and when the surveyor starts from Brungard's Corner, the result differs from that when he begins at the corner of the depot. The original bearing of Washington Street is unknown, for the old deeds bind only the parties to them, and they are subsequent in date to the conveyance to Rapplege. At first this street, as shown by the original plat, was sixty-six feet wide, and now a line of sixty feet will touch the improvements on either side, at any point. The true line cannot be ascertained; and the question recurs not as to the mathematical line, but rather such line as the city can successfully assert against the appellee.

2. Costly improvements have been erected along the street by abutting proprietors. Adoption of the line run by Dabney would lead to the destruction of these. In a case of doubt, like this, a sacrifice of this character cannot be tolerated. It is not improbable that the true line is marked by these structures. At all events, it was not only the right but the duty of the city to adopt that as the line. By agreement with the appellee's agent, the city adopted a conventional line, the grading was done accordingly, and the wall and terraces replaced by the appellee. The city is estopped, therefore, to claim a different line. *Vicksburg Railroad Co.* v. *Ragsdale*, 54 Miss. 200. More than forty years, the appellee has held and claimed as his own further east than the brick wall, and this avails him as effectually as any other source or muniment of title unless he has trespassed on an easement. For peace with the city, the appellee gave up promptly what he had held so many years, and the wall runs as near the western line of the street as at this day is attainable.

3. The Dabney survey lacks the two essentials of absolute exactness, to wit: the real initial point and the true direction of Washington Street. To establish precisely the lines of the street, it would be necessary to retrace the Pinckardia tract and determine the initial point at the intersection of Veto

Street, and then to ascertain the course of the line southward as actually run when the land was laid off into squares, lots, and streets. The city has not done this. All the surveys were *ex parte*, obligatory on no one, and only of value according to their intrinsic worth. And none of them, since the land was sold by Vick to Pinckard, and by him divided for sale, have started at the post by the river, or followed the original course.

*M. Marshall*, on the same side.

The Dabney survey is not reliable, because it started from no initial point in Pinckardia, or even at Brungard's Corner, which would be wrong, as the Pinckardia survey was not in accordance with the original city; the measurements may be incorrect, owing to the numerous hills; the northern line of Veto Street is not located, and the direction of Washington Street south is doubtful. Other surveyors fixed a different line. Improvement of the property on Washington Street has been with reference to prior surveys, and this cannot be now altered. The city is barred by adverse possession. *Clements* v. *Anderson*, 46 Miss. 581; *Briel* v. *Natchez*, 48 Miss. 423. Possession is not by encroachment, for the city never before claimed the parcel, but is continuous from Rapplege, who bought of Pinckard in 1836, over three years before the record of the plat of Pinckardia, and some six years before the dedication by Pinckard took effect by acceptance by the city. *Sanford* v. *Meridian*, 52 Miss. 383. Even if not good as a bar under the statute, the city would be estopped by the actual holding adversely to the line as then run, and improvements made with reference thereto. *Cincinnati* v. *Evans*, 5 Ohio St. 594. The city is estopped by the compromise which was acted on, for the *status quo* is now incapable of restoration.

Cooper J., delivered the opinion of the court.

The complainant and those under whom he claims title purchased the property occupied by him, as lots laid off, surveyed and sold as a part of Pinckardia, and cannot controvert the fact of dedication by Pinckard of the streets described in the plat. The fact that the plat was not formally enrolled by him until after the sale of the lots now owned by the appellee

does not at all affect the question of dedication, for it is immaterial when the dedication was formally made, since it is clear that the deed from Pinckard to Rapplege did not convey the street, but only the lot abutting on the street, and therefore he could dedicate it to the public as well after as before the .sale. But the dedication was in fact made before the enrolment of the plat. The survey and sale of lots with reference to the streets was in itself a dedication. *Brown* v. *Manning*, 6 Ohio, 298; Dillon Mun. Corp. §§ 638, 640.

The streets in an incorporated town are held by the corporation in trust for the public, and an adverse possession thereof by an abutting owner cannot bar the right of the corporation to open it for public use. Dillon Mun. Corp. § 675.

If it is admitted that the corporation had the power to adopt a conventional line as the boundary of Washington Street by agreement with the appellee, as it is stated in his supplemental bill to have done, the evidence in support of the allegation is entirely insufficient to establish such agreement. No assent of the corporation is shown to have been given to this line, except through the commissioner of streets, and in the absence of authority on his part to make such contract, it was, if made, ineffectual as against the city.

We consider the only question in the case to be, whether the true line of Washington Street has been established by the evidence. We are of opinion that it has been done, and that either the line run by Dabney, or that concurred in by other surveyors who had previously, by running from another point, found the line to be from two and a half to two and a quarter feet further east than his, is the true line of the street. In other words we think the direction of the street south of Veto Street is south, seven degrees west, and this is the material point in controversy. The line as run by Dabney starting from "Brungard's Corner," goes $2\frac{47}{100}$ feet further west than the line run on the same angle of variation by other surveyors beginning at another point.

We think the probabilities are that the Dabney survey is correct, but as it seems that the other line has been to a considerable extent recognized by persons building on the street as the true line, and as it is possible that as to these persons

the city is estopped to deny the correctness of this survey, we will give to the appellee the benefit of claiming this to be the true line, and therefore direct that when this case is remanded to the lower court, a decree shall be made perpetuating the injunction as to that part of the lot lying west of a line drawn $2\frac{47}{100}$ feet east of the line run by Dabney, and otherwise it shall be dissolved.

*Decree reversed.*