# CHARLESTON.

## Jarvis *v.* Town of Grafton.

Submitted September 10, 1897—Decided March 26, 1898.

1. Injunction—*Streets and Alleys—Tenant for Life.*

     A tenant for life has the immediate freehold and therefore the sole right to hold, use, and enjoy, and may sue out an injunction to restrain a town from opening streets and alleys through his premises, against his consent, without first having the same lawfully taken and condemned, and compensation to such person ascertained in the manner prescribed by law.   (p. 459).

2. Adverse Possession.

     Possession, in order to be adverse, must be (1) hostile or adverse; (2) actual; (3) visible, notorious and exclusive; (4) continuous; (5) under color of title.   *Heavner* v. *Morgan,* 41 W.Va., 428.   (p. 465).

3. DEDICATION—*Acceptance – Streets and Alleys.*

    Recognition of a plan of an addition to a town (dedicated there-
    to by the owners of the land) by the authorities of such town, by
    an ordinance adopted and published, naming the streets and
    alleys, and opening and using a part of such streets and alleys,
    is an acceptance thereof. (p. 462).

Appeal from Circuit Court, Taylor County.

Bill by Ann M. Jarvis against the town of Grafton for an injunction. From a decree for plaintiff, defendant appeals.

*Reversed.*

W. R. D. DENT and B. F. BAILEY, for appellant.

W. T. ICE and I. E. ROBINSON, for appellee.

McWHORTER, JUDGE:

By deed dated March 31, 1884, Claude S. Jarvis conveyed to his mother, Ann M. Jarvis, certain real estate, as follows: "For and in consideration of natural love and affection, the said party of the first part does grant unto the said party of the second part the following described real estate, situated in the town of Grafton, Taylor county, West Virginia, consisting of three town lots fronting on Wilfred street, and bounded on the west by an alley adjoining the school-house lots, and on the north by —————— street, and on the east by lots owned by H. J. Mugler, and designated on the Fetterman plat of said town as lots Nos. 386, 387 and half of 398½, and being the same lots upon which the said Claude S. Jarvis has recently built a new dwelling house, in which Granville E. Jarvis now resides;" which deed contains the following provision: "And the said Ann M. Jarvis is to have and to hold the same as her own, and at her death the property described herein is to revert to the said Claude S. Jarvis (and, in case of the death of the said Claude S. Jarvis prior to the decease of his mother, the property to be hers); he to have and to hold as his own on the payment to each of his sisters, Anna and Lillie, the sum of $500 (five hundred dollars) each, if he outlives his mother,"—which deed was duly recorded in t he office of the clerk of the county court of Taylor county,

April 21, 1884.  Mrs. Jarvis took possession at once, and had the lots inclosed by a fence, all in one inclosure, from Wilfred street to Knotts avenue.  At a meeting of the town council held August 22, 1894, the following order was made:  "On motion, the mayor was instructed to notify Mrs. Ann M. Jarvis to appear before council Wednesday, September 5, 1894, and show cause, if any she can, why Alphonsus alley should not be opened for public use." And Mrs. Jarvis being accordingly notified, appeared, and filed her answer in writing, claiming that such alley could not be opened until the property was condemned therefor according to law; that no such alley across her grounds had ever been laid out and dedicated to the said town, and therefore no acceptance of such alley was ever made by the proper authorities of said town; either express or implied; that respondent had had the actual, open, notorious, continuous, and adverse possession of the ground claimed by the town for such alley, had had the same inclosed by a fence, had lived on the same, and occupied every part thereof, in good faith, for more than ten years.

On the 3d of September, 1894, Mrs. Jarvis filed her bill in the circuit court of Taylor county, setting up the purchase of the property, consisting of three lots lying contiguous to each other, and that no street or alley was shown on the plat through or across them, or either of them; that none had ever been opened across or between said lots, or either of them; that at the time of the purchase they were situated in a common adjoining said town, were not inclosed or occupied by any one, and no evidence of any street or alley having been laid off between said lots, or across the same, was shown thereon; that immediately after the purchase she took possession, graded and prepared them at large expense for the purpose of building a dwelling house, and inclosed them by building a fence around them on the outside lines, and from that time on had actual, open, notorious, continuous, and adverse possession of all the ground inclosed by said fence, and as soon as the lot of ground was graded and prepared for the purpose a large dwelling house was erected on it, and she had continuously resided there ever since its completion; that other valuable buildings had been erected upon said lots, such as stables, out-

buildings, etc.; that at the time said lots were purchased they were very rough and steep, with a deep ravine running through them, which rendered them, at the time of the purchase, of but little value; that, since she had owned and occupied them, they had been much improved by filling the ravine, grading and cultivating, and planting fruit and ornamental trees, so that she had made it a beautiful and valuable home, and had had exclusive, adverse possession for more than ten years, that she was informed and believed that the common council of the town of Grafton claimed that there was located between her said lots, running west from Luzader street to the school house, a certain alley, called "Alphonsus Alley," which the town's council claimed a right to open through her property, which, if successful, would ruin her valuable property, and would be of no convenience or accommodation to the general public, or to a single individual, but would be of irreparable damage to her; that notice had been given her of the town's intention to open said alley (and filed a copy of said notice); and alleged that no such alley was ever laid out and dedicated to the town by the Fettermans, or other person who was the owner of said land and had the right to dedicate the same; that no acceptance of said alley was ever made by the authorities of said town, either express or implied; and prayed that the town be inhibited and restrained from opening said alley until the same had been condemned and established according to law, and for general relief.   Upon which bill the judge of the circuit court granted an injunction.   On the 4th day of January, 1895, the defendant tendered its written answer, and moved the court to dissolve the injunction and dismiss the bill.   Plaintiff excepted to the answer, and moved the court to reject the same, and the court took time to consider of the motion.   On the 8th day of January, 1896, the the court overruled the motion to reject the answer and ordered the same filed, to which the plaintiff replied generally.

The defendant's answer admits that it was proceeding to open the alley commonly known and called "Alphonsus Alley," but now called in the ordinances of the town "Half. way Alley;" that many years ago the heirs of Sarah B. Fet-

terman made and laid out an addition to the town of Grafton, numbering the lots, and numbering the alleys and streets; that the alley in controversy was named by said Fetterman heirs "Alphonsus Alley," and as such was dedicated to the said town; that said Fetterman heirs sold and conveyed all the lots lying along either side of said alley, and every deed, without a single exception, called for said alley either as the north or south boundary thereof, showing conclusively a dedication of the same to the defendant; that said alley was accepted by the defendant by printing the name of the same in the ordinances of said town, first by the name of "Alphonsus Alley," as defendant is informed and believes, but, the records of said town having been lost or destroyed, in renaming the said alley it was called "Halfway Alley," and is so now named and called in the printed ordinances of said town; that little or no work had been done by respondent on said alley, for the reason that it was in an unimproved portion of the town, the land lying out to the common; that some time in the year 1885 the complainant was permitted to build a temporary fence across the end of said alley, in order to save the expense of building a fence across her three said lots; that at the time of building her said fence, plaintiff made no claim to said alley; that in the last several years she had been several times notified to remove said fence, and had invariably requested that she be allowed time until her garden should mature, or some such subterfuge, never once claiming that she owned said alley, or that she was holding adversely to defendant, but at all times admitting that she was holding by permission of it, and that she would remove her fence; that some time in the early spring of 1894, she was again notified to remove, and again agreed to remove, her fence, but, not so doing, she was notified to appear before the council of said town, and show cause, if any she could, why said alley should not be opened, to which notice she made appearance, and, upon consideration of said notice and evidence, the said council ordered the alley to be opened, but plaintiff, not desiring to act fairly and honestly, and conceiving the statute of limitations had given title to said alley, has most unconscientiously appealed to a court of equity, and sued out this most unjust injunction. Res-

pondent denied that plaintiff had any claim or color of title to the land upon which the alley is situated, or that she had adverse possession for the period of ten years, but, on the contrary, the occupancy of said land has been by consent and permission of the defendant up until a few days before the suing out of the injunction, when she commenced to claim the land; and, further, that said alley was dedicated to and accepted by the defendant; that plaintiff had full notice and knowledge of said alley; that she has the number of feet of land inclosed, exclusive of said alley, conveyed to her by her son, Claude S. Jarvis, whose deeds call for said alley, and who conveyed said lots by numbers to her, and only for her life. Plaintiff replied generally to said answer.

Depositions were taken by the parties in said cause, and on the 20th day of April, 1895, the cause was heard upon the bill, answer of defendant, and general replication, exhibits filed with the bill, and depositions of witnesses, taken by the plaintiff and defendant, the exhibits filed with said depositions, and all former orders and decrees entered in the cause, and was argued by counsel. On consideration whereof, the court was of opinion, from the pleadings, proofs, and exhibits, that the cause is for the plaintiff; and it was therefore ordered, adjudged, and decreed that the defendant, from all proceedings to open any alley through the lots of plaintiff, in the bill and proceedings mentioned, or to appropriate any of the lands to the public use of the town of Grafton, be forever enjoined, until by proper proceedings the said town acquires the right to do so; with costs to the plaintiff. From which decree the defendant appealed, and assigned that the court erred "(1) in deciding that Ann M. Jarvis, she being tenant for life, had a right to sue out an injunction against petitioner, and claim adversary possession, under color of title, to the alley in controversy, and therefore become owner in fee of the alley in question; (2) in deciding that the plaintiff did not have a plain, complete, and adequate remedy at law, by *certiorari* from the decision of the common council, which is fully disclosed by the record; (3) in perpetuating the said injunction, in the face of the overwhelming testimony that the plaintiff was holding possession with and by the con-

sent of the defendant, and had no color or claim of title." From the nature of the cause, the three assignments will be treated together.

A tenant for life has the right of use and enjoyment, "the immediate freehold, and therefore the sole right to hold, use, and enjoy." *Koen* v. *Bartlett*, 41 W. Va., 560, (23 S. E. 666). "An injunction will lie to restrain a town from opening streets and alleys through a person's land, against his consent, without first having the same lawfully taken and condemned, and compensation to such person ascertained, in the manner prescribed by law." *Mason City Salt & Mining Co.* v. *Town of Mason*, 23 W. Va., 211; *Pierpont* v. *Town of Harrisville*, 9 W. Va., 215; *Yates* v. *Grafton*, 33 W. Va., 507, (11 S. E. 8). There are but two questions involved in the cause: First, the dedication of the alley in question, and the acceptance thereof by the authorities of the town; and, second, the claim of adverse possession by the appellee, under color of title.

The deed from Claude S. Jarvis to his mother conveys "three town lots fronting on Wilfred street, and bounded on the west by an alley adjoining the school-house lots, and on the north by —— street, and on the east by lots owned by H. J. Mugler, and designated on the Fetterman plat of said town as lots Nos. 386, 387, and half of 398½, and being the same lots upon which the said Claude S. Jarvis has recently built a new dwelling house, in which Granville E. Jarvis now resides." It is true that this description ignores the alley back of lots 386 and 387, which front on Wilfred street, but it refers to the "Fetterman plat of said town." The school-house alley runs the whole length of said lots from Wilfred street north to Knotts avenue, bounding said lots, while Mugler's lots, bounding on the east, run from Wilfred street back one hundred and ten feet, to where the alley is claimed to be The deed from the Fettermans to Charles W. White, dated February 17, 1870, and duly recorded, conveyed these same lots (386 and 387), and referred to them as being in Fetterman's plat of the extension of the town of Grafton, in the county of Taylor, and they are therein described as follows: "Beginning on the upper or northern side of Wilfred street, at the northeastern corner of O'Leary al-

ley, and running thence easterly, along the upper side of Wilfred street, eighty (80) feet, to the corner of lot numbered three hundred and eighty-eight (388); thence northerly, along the line of said lot, and parallel with O'Leary alley, one hundred and ten (110) feet, to an alley fifteen (15) feet wide; thence westerly, along the lower side of said alley, eighty (80) feet, to the corner of O'Leary alley; and thence, along the eastern side of said alley, southerly, parallel with St. John street, and at right angles to Wilfred street, one hundred and ten (110) feet, to the corner of O'Leary alley and Wilfred street, at the place of beginning." O'Leary alley is what is now School-House alley; and the alley fifteen feet wide, one hundred and ten feet from Wilfred street, is the alley in controversy, but no name given.  Charles W. White, by deed of date March 3, 1874, conveyed lot "numbered 386 on the plat of Fetterman of the survey made of lots in said town of Grafton" to D. W. Brady, who by deed of August 7, 1876, conveyed same lot (386), referring to said plat, to Greer & Laing, who on the 16th of May, 1883, conveyed same lot (386) to Claude S. Jarvis, referring therein to said Fetterman plat. By deed of February 26, 1878, Charles W. White conveyed to John F. Clayton lot numbered 387 in Fetterman's plat of the extension of the town of Grafton, in the county of Taylor, "said lot lying on the north side of Wilfred street, and being forty feet wide and 110 feet long or deep;" and by deed of May 8, 1883, John F. Clayton conveyed the same "lot No. 387, in Fetterman plat of the extension of town of Grafton," etc., to Claude S. Jarvis; and by deed dated May 21, 1883, the heirs of Gertrude S. McMaster conveyed to Claude S. Jarvis "the following described piece or parcel of land, lying in the town of Grafton, Taylor county, W. Va., it being the one.half of lot 398½ on the plat of Fetterman's addition to said town, the whole of which said lot 398½ is bounded as follows, to wit:  Beginning at the corner of Knotts avenue and Luzader street, and running thence, along the lower line of Knotts avenue, northwesterly, to the corner of said avenue and School alley; thence, in a southerly direction, along the line of School alley, to the corner of said alley and Alphonsus alley; thence, along the upper side of Alphonsus alley; S.,

73½ E., to corner of Luzader street; thence, along the western line of Luzader street, N., 17½ E., to the corner of Luzader street and Knotts avenue, to the beginning. * * * Now, it is the intention of this deed and the parties of the first part to convey, and they do hereby convey, to the party of the second part, the one-half of the above-described lot of ground; it being that part or one-half lying on the west side of the school lot, and adjoining said school lot, and fronting on Knotts avenue."

It will be seen, from the last-mentioned deed, that it fully recognizes Alphonsus alley, which runs one hundred and ten feet north of, and parallel with, Wilfred street, and separates by the space of fifteen feet the ends of lots 386 and 387 from the south side of lot 398½. So that it clearly appears that the fifteen feet of ground was not conveyed to Claude S. Jarvis, either with the lots 386 and 387, or with 398½. And it appears in the description given in the conveyance of Claude S. Jarvis to his mother that the description principally relied upon for identification of the lots, especially of No. 398½, must be by number and reference to plats and former conveyances, because there is no eastern boundary given. The three lots are mentioned by numbers, and boundaries given on three sides only of lots 386 and 387, and on but two sides of lot 398½; and, to locate the last-named lot correctly, reference to the deed conveying the same to the vendor, Claude S. Jarvis, is a necessity, and that deed makes the upper side of Alphonsus alley, S., 73½ E., from School alley, to corner of Luzader street, one of the boundaries of said whole lot 398½. So that Mrs. Jarvis is charged with knowledge of the existence of said alley. "When a conveyance of lots refers to a certain plan of a town for complete description, the grantor is charged with knowledge of all the facts to be ascertained by an inspection of said plan." *Depriest* v. *Jones,* (Va.) 21 S. E. 478. While the Fettermans made deeds, at least from the year 1870 on, with reference to the plan of the town or addition to the town of Grafton laid out by them, which deeds were entered of record, the plat referred to was not recorded until the year 1887, when it was recorded by the agent and personal representative of the estate, George W. Whites-

carver. There can be no question about the purpose and intent of the Fettermans to dedicate the streets and alleys to the use of the public as laid down on the plat, and called for in the various deeds made by the Fettermans, and recorded. "And the intention is the soul of every act of dedication." *City of Eureka* v. *Croghan*, 81 Cal. 524, (22 Pac. 693). And the authorities of the town accepted such dedication as early at least as 1884, when Ordinance No. 10 was published, giving names to the streets and alleys, including the alley in question; and, while this alley was never used by the public, its existence was recognized, and the streets mentioned in the same plan were used. They named the alley designated in their ordinance as the alley next north of Wilfred street as "Halfway Alley" (this being the alley in controversy), and the same was again published in 1887. There was clearly the same purpose on the part of the town authorities to accept the dedication that there was on the part of the owners of the property to dedicate it to public use. While Alphonsus alley is not clearly shown upon said map recorded, the town authorities, as well as the owners of the property, have recognized the location of it by all their acts, and the question for the court to decide is whether the appellee had such adversary possession, with color of title, as would give her title to this alley. It is shown clearly by the evidence that the town authorities on different occasions took the initiative steps to open the alley, and were as often met by the declaration of appellee that, if she was let alone until she could get her garden stuff off, the alley might be opened without opposition. On the 19th day of July, 1893, the common council of Grafton made the following order: "On motion, the street commissioner was directed to open up for use the alley running north and south along the eastern boundary of the public-school lot; also, the alley running east from said alley to Luzader street." The alley, if opened, would run directly through the premises of Mrs. Jarvis, and was the alley in question. Mrs. Jarvis says that in July, 1893, Mr. Blaney, who was then a member of the council, came to her, and said that he had been ordered to look up the alleys, and she told him if there was an alley running through her lots, she did not know it, and

claims that that was the first time that she had ever heard of the alley; that the lots were inclosed in the spring of 1884, and that she had had them inclosed ever since that time; that there is a building occupying part of that ground which was built for an outhouse and other conveniences, such as a place for garden tools and such like; that she had trees planted on it; and that she does not remember of ever being notified to remove the fences; that, according to her recollection, when Mr. Blaney came and told her he was looking up the alleys was the first time she had ever been approached by the town authorities; that she had no recollection of being notified in May, 1887, that the alley should be opened to the general public. Frank T. Bender testifies that in 1887 and 1888 he was policeman; that in 1887 Esquire Haymond was mayor; that in 1887 he served notice on Mrs. Jarvis, and also served notice on Mr. Jarvis, in relation to the opening of the alley in controversy. Mrs. Jarvis says that she has no recollection of any such notice being served. Lewis Haymond, who was then mayor, says that he had notices served on both Mr. and Mrs. Jarvis; that the first notice was served on Mr. Jarvis, and the council found that he did not own the lots, and that they belonged to Mrs. Jarvis; that then he had notice served on her, by Policeman Bender; that the notice was returned to him served; that he had talked with Mrs. Jarvis, but does not recollect the exact conversation; that he thinks he canceled the order to open it because she claimed to have something growing on the ground, and said that, if it was permitted to remain closed until she got the crop off, it might then be opened; that he had frequent conversations with Mr. Jarvis in regard to it; that he never claimed they owned the alley; that they claimed to him that there was a nice peach tree standing on the alley, which they hated to have destroyed. Mr. Haymond says that in the year 1893, a short time after they were looking after the location of the alley, Mrs. Jarvis came into Mr. Boyles' grocery store, and said to him that the opening of the alley seemed to be pressed by him, and said that she had seen some of the members of the council, and they said, as far as they were concerned, as for pressing the opening of the alley until her garden would mature, and she could

save it and use it they were willing for her to keep
it that length of time; and he told her the same; and
she said, as soon as she could gather her garden,
that she would let the alley be opened peacefully, and
without any more trouble or contention.  Mrs. Jarvis
remembers having a conversation with Mr. Haymond,
but does not remember making such statement.  R.
D. Woolford says he was mayor of the city from
April 1, 1893, to April, 1894; says there was an effort
made in 1893 to open the alley in question,—a committee
appointed to go and open it,—but it was not opened; that
he had a conversation with Mrs. Jarvis, which conversa-
tion was that her garden was green, or, if she did not use
that language, that the garden was not mature, and she
would be at a loss if the alley was then opened; that, if it
was allowed to remain until her garden crop matured, she
would withdraw her objection; that she did not claim to
own the alley.  Mrs. Jarvis admits having a conversation
with Mr. Woolford, but says she never promised Mr.
Woolford or any one else that she would open her garden
after it matured, but does not deny that she said she would
withdraw her objection.  Mr. Mugler says that, in a con-
versation with Mrs. Jarvis in 1893, she said she had some
garden truck on the ground, and, if the town authorities
would give her time to get it off, she would have no objec-
tion to them opening up the alley.  She admits a conversa-
tion with him, but denies making that statement.  George
W. White states that she said she had garden growing
thereon, and if they would kindly not interrupt it, and per-
mit the garden to mature, she would then open the alley
without any trouble whatever, and says Mr. Woolford was
present, and that she did not at any time lay any claim
whatever to the alley.  She says she only stated to them,
or tried to state to them, how she was interrupted; that
Mr. Woolford appeared a little abrupt in his manner, and
Mr. White, she was confident, was under the influence of
whisky, or something, from his manner towards her; that
she did not talk to them longer than three to five minutes,
and did not promise them that she would open up her lot.
W. R. D. Dent testifies that Mrs. Jarvis called at his office
some time in the fall of 1893, and said something about

them raising a fuss about the alley, and thinks she was on her way to the mayor's office to see about it, and wanted to know of him if there was not some way by which she could buy the alley, and get rid of the fuss,—that she was tired of being bothered about it; and he told her that the coporation could not sell the streets or alleys, but, as there were so few property holders whose lots abutted on the alley, there might be amicable arrangements made by which they could close it up; that something was said about consideration (the amount he does not remember distinctly), and she went on down street, and on her way up street she told him she had seen Mayor Woolford, and had arranged about the matter. In reply to this, she says Mr. Dent told her that they were going to open the alley, and she thinks she said to Mr. Dent that she would rather pay twice the price of the ground, than to have her lots disturbed that way, but never offered to buy the ground from Mr. Dent, for the reason that she had never thought of such a thing as that, and that she would not have the slightest idea what to offer him for the ground.

It is pretty clearly shown that Mrs. Jarvis had the alley in question inclosed, and was in the actual possession thereof for ten years; but was her possession adverse? "Possession, in order to be adverse, must be (1) hostile or adverse; (2) actual; (3) visible, notorious, and exclusive; (4) continuous; (5) under claim of title." *Heavner* v. *Morgan*, 41 W. Va., 228, (23 S. E. 874). Mrs. Jarvis claims to have never heard of an alley being located there until 1883, in July; but it is shown that in 1887 she was notified, and at that time she admitted the right of the town to open the alley, and said that, if she should be permitted to gather the crop she had on it, she would allow it opened without opposition. And so, frequently afterwards, never claiming it as her own, or that she could in any way question the right of the town to open it, until she had "passed the Rubicon" of the ten-year limit; and then, for the first time, her possession became hostile and adverse; and not until then was she ready to say to the town, and to all the world, that she was, in her own right, holding the possession under title conveying it to her. The great preponderance of testimony shows that while her possession was actual,

visible, notorious, and continuous, she was careful that it should not appear to be hostile or adverse, evidently intending to do the very thing she accomplished,—to lull the authorities into a false security, leading them to believe they would meet with no opposition from her in opening the alley whenever they might desire, at a time when she would have no crop upon it. For the reasons herein stated, the decree perpetuating the injunction is reversed and annulled, the injunction is dissolved, and appellee's bill dismissed.

*Reversed.*