# CHARLESTON.

RALSTON v. TOWN OF WESTON.

Submitted January 30, 1899—Decided April 22, 1899.

1. DEDICATION—*Municipal Corporations—Streets—Estoppel.*

If an original owner of a tract of land lays the same off into town lots, with streets and alleys between, and has the same so platted, and sells the lots with reference to such streets and alleys as boundary lines of the same, and such plat is adopted by the corporate authorities of the town in which such lots are situated, a purchaser of one such lots is estopped from denying the dedication of such streets to public use. [p. 550].

2. STATUTE OF LIMITATIONS—*Municipal Corporations—State.*

The statute of limitations runs against the State and municipal corporations, as against individuals in all similar cases. [p. 547.]

3. DEDICATION—*Nullum Tempus Occurit Regi.*

The maxim, "*Nullum tempus occurit regi*" applies to all the sovereign rights and property of the people of the State dedi-cated to public uses, and of which they cannot be deprived oth-erwise than according to their express will and appointment. [p. 549.]

4. DEDICATION—*Easemeut—Eminent Domain—Highway.*

The public easement in the public highways, including roads, streets, alleys, and other public thoroughfares, dedicated to the use of the general public by individuals, or under the right of eminent domain, is such property, and cannot be lost to the people by the negligence of public officials or the unlawful acts of indi-viduals. [p. 549].

5. DEDICATION—*Easement—Prescription—Adverse Possession.*

An individual cannot destroy such easement by setting up a claim by prescription, adverse possession under the statute of limitations, or equitable estoppel, as the people cannot be de-prived of their sovereign rights in any of these ways. [p. 555].

6. STATUTE OF LIMITATIONS—*Easement—Highway.*

The opinions of the judges of this Court in the cases of *City of Wheeling* v. *Campbell*, 12 W. Va. 36, *Forsyth* v. *City of Wheeling*, 19 W. Va. 318, and *Teass* v. *City of St. Albans.* 38 W. Va. 1, in so far as they hold that the public easement in the public high-ways of this State is subject to the bar of the statute of limita-tions, are disapproved. [p. 555].

7. EMINENT DOMAIN—*Compensation*.

   It is the expressed will of the people of this State that private property shall not be taken or damaged for public use by governmental officers or agencies, without just compensation.   [p. 556.]

Appeal from Circuit Court Lewis County.

Action by E. Ralston against the town of Weston. Judgment for plaintiff, and defendant appeals.

<em>Reversed.</em>

EDWARD A. BRANNON, for appellant.

WILLIAM W. BRANNON, for appellee.

DENT, PRESIDENT:

This is a controversy between the town of Weston, defendant, and Er Ralston, plaintiff, over the right to a public easement in a small strip of land thirteen and one-half feet by seventy-two and one-half feet, being a part of Water street, as originally laid off and dedicated to public use at a very early date, almost beyond the memory of man, by Maxwell and Stringer, who sold lot 12, adjacent to such strip, to those under whom plaintiff claims title. While plaintiff raises the question of dedication and acceptance, as is usual in similar cases, his main reliance is on adverse possession under a claim of title for a much longer period than the statute of limitations. From the evidence this case clearly comes within the rules of law and principles determined in the case of *Taylor* v. *Philippi*, 35 W. Va. 554, (14 S. E. 130), and *Jarvis* v. *Town of Grafton*, 44 W. Va. 453, (30 S. E. 178); for the reason that the original occupation of the strip in controversy, and the continuance thereof, was under the sufferance and permission of the municipal authorities, and no claim was made thereto, under the statute of limitations, until it was supposed that, under the decision in the case of *City of Wheeling* v. *Campbell*, 12 W. Va. 36, as followed in the cases of *Forsyth* v. *City of Wheeling*, 19 W. Va. 318, and *Teass* v. *City of St. Albans*, 38 W. Va. 1, (17 S. E. 400), the public easement therein was barred, and could not be regained except by recourse to the right of eminent domain. The original occupation not being adverse, it could not become so until the defendant had positive notice that the plaintiff was going to set up a claim of title perfected by adverse possession. *Hutson* v. *Putney*, 14 W. Va. 561; *Industrial Co.* v. *Schultz*, 43

W. Va. 470, (27 S. E. 255); *Creekmur* v. *Creekmur*, 75 Va. 430; 1 Am. & Eng. Enc. Law (2d Ed.) 798. If the plaintiff had at any time during his long possession given the defendant notice that he intended to hold the land adversely, there is no doubt he would at once have been dispossessed, and no lapse of time, and no possession of a portion of a street not required by the present necessities of the public, could raise the presumption of such notice; for the reason that there is nothing inconsistent with a public easement for the authorities to allow an abutting landowner the temporary occupation of a public highway not demanded for the present use of the public. It requires great labor and expense to grade, curb, and pave the streets of a town, and it is never done until the exigencies of the town demand it, and unused streets are allowed to lie idle until such requirement, and in the meantime there is no good reason why abutting lot owners may not use unoccupied portions of such street for private purposes, so long as such use does not interfere with, but is entirely subordinate to, the public use thereof. Such has long been the custom, and would continue so, to the benefit of individuals and without hurt to the public, were it not for the baneful effect of the conclusion arrived at by this Court in the case of *City of Wheeling* v. *Campbell*, cited.

The question of dedication and acceptance is hardly worthy of consideration, from the fact that plaintiff is not the original owner of the land, but claims under a deed and plat by which such street was dedicated to the public, and, it being inconsistent with his title papers, he is estopped from denying such dedication. Such dedication was not an act of his, but was long prior to his deed, which recognized and adopted the same. The same may be said of the acceptance by the defendant. It was perfect before his title accrued, in subordination thereto. *Jarvis* v. *Town of Grafton* and *Taylor* v. *Philippi*, before cited; *Riddle* v. *Town of Charlestown*, 43 W. Va. 796, (28 S. E. 831); *Taylor* v. *Com.*, 29 Gratt. 780; *Depriest* v. *Jones*, (Va.) 21 S. E. 478; *Button* v. *City of Danville*, 93 Va. 200, (24 S. E. 830); 9 Am. & Eng. Enc. Law (2d Ed.) 46.

Although, on the question of adverse possession, plaintiff has failed to make out his title, yet as this question is of such general importance, and has been so ably and ex-

haustively argued by the attorneys of both parties, the Court would be derelict in its duty not to squarely meet the issues raised, and fearlessly settle them for the public good. The point is at once presented whether the law justifies the Court in reviewing, disapproving or modifying the doctrines enunciated, and conclusion reached, in the case of *City of Wheeling* v. *Campbell*, followed in the cases of *Forsyth* v. *City of Wheeling* and *Teass* v. *City of St. Albans*, and recognized in the case of *Taylor* v. *Philippi* and *Jarvis* v. *Town of Grafton*,, all heretofore cited.

The case of *City of Wheeling* v. *Campbell*, while ably considered in following the supposed weight of authority, is a plain and palpable misapplication of the statute of limitations to the sovereign rights of the people. That the statute of limitations applies to municipal corporations there can be no question; that it now applies to the State in like manner as to individuals, by express statutory provision, there can be no question; but it does not apply to the sovereign rights of the people, except as they are restricted in the constitution by their manifest will therein contained. In the case of *Levassas* v. *Washburn*, 11 Grat. 576, quoted and approved by Judge Johnson in the case of *City of Wheeling* v. *Campbell*, Judge Lee says: "It is a maxim of great antiquity in the English law that no time runs against the crown, or, as is expressed in the early law writers, 'Nullum tempus occurrit regi.' The reason sometimes assigned why no laches shall be imputed to the king is that he is continually busied for the public good, and has no leisure to assert his rights within the period limited to his subjects. A better reason is the great public policy of preserving public rights and property from damage and loss through the negligence of public officers. This reason certainly is equally, if not more, cogent, in a representative government, where the power of the people is delegated to others, and must be exercised by these, if exercised at all; and accordingly the principle is held to have been transferred to the sovereign people of this country, when they succeeded to the rights of the king of Great Britain, and formed independent governments in their respective states. And, though it has sometimes been called a prerogative right, it is, in fact, nothing more than an exception or reservation introduced for the public bene-

fit, and equally applicable to all governments." The constitution of this State clearly shows in whom all sovereign rights reside. Section 2 of Art. II. declares: "The powers of government reside in all of the citizens of the State and can be rightfully exercised only in accordance with their will and appointment." Section 2, Art. III. declares: "All power is vested in and consequently derived from the people. Magistrates are their trustees and servants and at all times amenable to them." The people, in their collective capacity, are sovereign. To them all so-called "prerogative rights" belong, and from them they cannot be taken, or in any wise diminished except in accordance with their own appointment. This State has no so-called "crown lands" or public domain, except its public highways, including roads, streets, alleys, and other thoroughfares devoted to the use of the general public, and also probably a few public squares and buildings. There are no parks which belong exclusively to the general public. State lands are only held temporarily, until they can pass into the hands of private individuals, who will pay the taxes thereon. So that we can well say that its highways are the only property the people of West Virginia hold in their sovereign capacity, and in these every individual has the same right, from the least to the greatest, and from which no one, however weak or small or mean, can be excluded. These are dedicated to the public business of the country, to its traffic and commercial interests, and without which the same could not thrive, if even exist. They are the pathways of communication from house to house, town to town, city to city. They are absolute necessities for the happiness, comfort, and well being of the people. The man who would destroy them, if he could, is an enemy to the community, fit only "for treason, stratagem, and spoils." It matters not whether they be in the town or country, the same protecting egis watches over them, and this is the sovereignty of the people. The public do not hold the title in fee. It may be in the original owner, the abutting lot owners, the municipality, or State, and there it rests in abeyance as long as the land is needed by the public, who hold only an easement therein. This easement is more potent because of its sovereign character, and while it exists entirely suspends the title, or renders it tem-

porarily nonexistent, for no man dare assert it. The word "state" is generally used to denote three different things, and often without discrimination: First, the territory within its jurisdiction; second, the government or governmental agencies appointed to carry out the will of the people; and, third, the people in their sovereign capacity. The State is not the sovereign in this country. The people who make it are sovereign, and all its officers are but their servants. So, statutes of limitations, which are made to apply to the State, do not apply to the people or their public rights. But they only apply to the State in the same cases that they apply to individuals. The entry upon, or recovery of, lands held for sale, suits on bonds, contracts, evidences of debt, or for torts,—all these, though the State is a party, are subject to bar. As to all such things, there is no reason why the State should have any longer time than an individual. Such is not the case with the right of taxation, the right of eminent domain, the right to use the public highways, and other rights, which pertain only to the sovereignty of the people. None of these can ever be lost by the negligence of the public servants, who have no power of disposal over them in any way whatever, except according to the express will of the people. It would be a strange thing for an individual to plead the statute in bar of the right of eminent domain, which is said to be the right of the people to take private property for public use. The right to keep it for public use should be as extensive as the right to take it; for one would be useless without the other. The former is said to be an attribute of sovereignty, and why not the latter? Some law writers, at least, estimate that the State, as representative of the people, may both take, hold, and control property for public use, under the right of eminent domain, "as the public safety, necessity, convenience, or welfare demand." Cooley, Const. Lim. 524. Others limit the meaning of "eminent domain" in its application to the appropriation by a sovereign State of private property for particular uses, for the benefit of the public. "All other exercises of power over private property, and every species of right in, and control and regulation over, property of a public nature, may properly be referred, as we have shown, to some other of the sovereign powers of the State." Lewis, Em. Dom. section

2. This author refers the holding of property to the sovereign right of proprietorship for the public good. In all cases where the sovereign rights of the State are referred to, the State is spoken of as representative of the people, and not of the territory or the government, or its agencies. The State, in its governmental capacity, has no right to alien, or authorize the alienation, of the public highways, except for the public good; but it may provide subagencies to control, make, repair, and otherwise exercise complete supervision over such highways, and make such agencies responsible for the good condition thereof, through their servants. Such it has done, by turning the roads, streets, alleys and other thoroughfares over to the counties, district and municipalities, being the political divisions in which they are respectively located, and has authorized such agencies to close, vacate, change, alter, or discontinue any of them no longer of benefit to the public. But such agencies have no right to sell, alien, or dispose of such highways in any manner, except as provided by statute. Nor can any individual destroy the public easement in such highway by any act of his own. It is a new quality given to land, when dedicated to the use of the public as a highway. And it is one that an individual can neither acquire nor enjoy by himself. When land ceases to be a highway, this quality no longer attaches to it, but it is utterly destroyed or becomes extinct. It belongs to the public, and not to the State, county, or municipality that may in their governmental capacities, under their police and administrative powers, regulate and control it in such manner as will conduce to the public welfare, and may destroy it if in accord with the sovereign will of the people, but not otherwise. If the easement is destroyed by the proper agency of the people, the title is revived, and the land reverts to the owner of the fee, whether it be the municipality, the abutting owners, or the original owner who first dedicated it to public use. If the easement is interfered with by an individual while it is alive, such interference is a public nuisance, and it matters not how long it is continued, it can never destroy the easement; for it is under the ban of the law, and subject to abatement at any time. A nuisance can never oust a public easement, no more than an individual can take away the sovereignty of the people. He may for-

feit his property and rights to them, but they can never, in a popular government, forfeit their sovereignty to him. He may cease to be a part thereof, but cannot enjoy more than his equal share therein. His nuisance must yield to their sovereignty, whenever they see fit, through their proper agencies, to exercise it. Once a nuisance, always a nuisance; once a highway, always a highway, until legally discontinued, changed, or altered. *Norfolk City* v. *Chamberlaine*, 29 Grat. 534; *Taylor* v. *Com.*, *Id.* 780; *Yates* v, *Town of Warrenton*, 4 Va. 337, (4 S. E. 818); *Depriest* v. *Jones* (Va.) 21 S. E. 478; *Buntin* v. *City of Danville*, 93 Va. 200, (24 S. E. 830); *Board of Sup'rs of Logan Co.* v. *City of Lincoln*, 81 Ill. 156; *Driggs* v. *Phillips*, 103 N. Y. 77, (8 N. E. 514); *City of Vicksburg* v. *Marshall*, 59 Miss. 563; *Rae* v. *Miller*, 99 Iowa, 650, (68 N. W. 899); *Wolfe* v. *Pearson*, 114 N. C. 621, (19 S. E. 624); *Crocker* v. *Collins*, 37 S. C. 327, (15 S. E. 951); *Williams* v. *City of St. Louis*, 120 Mo. 403, (25 S. W. 561); *Ulman* v. *Charles Street Ave. Co.*, 83 Md. 130, (34 Atl. 366); *Coleman* v. *Thurmond*, 56 Tex. 514; *Webb* v. *City of Demopolis*, 95 Ala. 116, (13 South. 289); *City of Visalia* v. *Jacob*, 65 Cal. 434, (Pac. 433); *Wolfe* v. *Town of Sullivan*, 133 Ind. 331, (32 N. E. 1017); *City of Quincy* v. *Jones*, 76 Ill. 231; Elliott, Roads & S. 668.

The reason given by Judge Johnson why the maxim of *"nullum tempus"* etc., cannot apply to municipalities, is "that it only applies to sovereignty, and the sovereign cannot transmit it to persons or corporations. A municipal corporation cannot claim exemption under it, any more than a natural person, although it may hold property in trust for the public." In short, that if a sovereign intrusts his property to a trustee to take care of for him, when one of his subjects presents himself and wrongfully proposes to appropriate the sovereign's property to his own use, the trustee cannot defend it as the property of the sovereign, but must let it go. So it may be said of the county, so it may be said of the State, and every public officer or agency; for they are all merely trustees and servants of the people. And, if such trustees are powerless to protect the rights of the sovereign people, then such sovereign has no rights that can be protected from individual encroachment, for the reason that the sovereignty of the people must be asserted through such gov-

ernmental agencies or not asserted at all. JUDGE JOHN-
SON invests the State with sovereignty which belongs alone
to the people, and of which the State is the mere trus-
tee, except when the word is used in a broad sense, to des-
ignate the people, and not governmental agencies. The
people have the power to impose the duty of protecting their
sovereign rights on any public agency or individual officer
or person they may see fit and proper, and the fact that
they do impose such duty on trustees or agents cannot
possibly destroy such rights without their consent. And it
is the duty of every man, woman and child in this State,
who enjoys the protection of the laws of the land, includ-
ing the use of its highways, to aid in preserving such pub-
lic sovereign rights intact, instead of seeking to overthrow
and destroy them. The king of England intrusted his
highways to supervisors and local authorities, yet it never
entered even the imagination of his subjects that by reason
thereof they could acquire rights against him in his high-
ways by means of nuisances maintained therein for any
length of time. The people of this country succeeded to
all his rights, and more than he are compelled to transact
their business through local agencies, and there is no more
reason that they, by so doing, should lose their rights than
he. Their sovereignty is far more pervading than his, for
it has representation of pure blood in every household
throughout the length and breadth of their domain. The
oversight in the learned JUDGE's opinion, and the numer-
ous decisions on which he places his reliance, is his failure
to distinguish the municipality in its private, ministerial,
and local governmental capacities from the municipality
in its higher governmental capacity as the agent of the
public, charged with the duty of preserving the sovereign
rights of the people. The municipality, though it may own
the fee, is not the owner of the public easement in the
land. This, as heretofore shown, belongs to the people,
and cannot exist apart from them. This the municipality
cannot alien or dispose of in any manner except in ac-
cordance with the express will of the people, for their bene-
fit. The statute of limitations, as relied on by the plain-
tiff, is not to bar any right the municipality has in the
street, but to destroy the public easement. It is not a plea

against their trustee, but a plea against the people in their sovereign capacity. If sustained, it does not oust the municipality, for its governmental control thereover still remains, but it ousts the people, even taking away their own right to use the street as a public highway. The same argument would deprive the people of any highways in the State if its governmental agencies are only neglectful of their duties; for all their highways are intrusted to local agencies. The doctrine of *"nulle tempus,"* etc., must apply to the rights of the people as the sovereign, it matters not what agency is intrusted with their care, or it must be altogether discarded in a popular form of government. And the people must be known as the uncrowned king, without a kingdom. Such sovereignty would be as helpless as Gulliver when staked to the ground by Lilliputians with hairs from his own head. The argument that municipalities should be specially diligent in looking after the rights of the people, or the people should suffer the loss thereof, is applicable to any public agency as well as municipalities, in England, as well as in America, and it was the want of such diligence, and the negligence of such agencies, that furnished the most reasonable foundation for the doctrine *nullum tempns;"* etc. To repeat Judge Lee's language: "A better reason is the great public policy of preserving public rights and property from damage and loss through the negligence of public officers." It does not matter whether such officers belong to a municipality, district, or a county, they are all public officers, so far as the public highways are concerned, and their negligence has the same disastrous effect on the public. *City of Charleston* v. *Beller*, 45 W. Va. 44, (30 S. E. 152.) The only logical conclusion that can possibly be reached is that the public easement in all the highways of the State, wherever situated, is sacred from individual encroachment, and all interference therewith, by private interests, is a continuing public nuisance, subject to abatement whenever the growing necessities of the people require such easement for the uses to which the land to which it attaches was originally dedicated. *O'Connor* v. *Pittsburg*, 18 Pa. St. 187. This conclusion, though adverse to *City of Wheeling* v. *Campbell*, is sustained by a vast and increasing

weight of authority, including England, Canada, the United States, the states of Alabama, California, Colorado, Indiana, Illinois, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Minnesota, Mississippi, Missouri, Montana, New York, New Hampshire, North Carolina, New Jersey, Ohio, Pennsylvania, Rhode Island, Tennessee, Texas, Utah, Washington, Wisconsin, and Virginia. Many of the authorities have been heretofore cited. See, also, 1 Am. & Eng. Enc. Law (2d Ed.) 878-880, where the authorities *pro* and *con* are collected. Whenever a decision of this Court is found, on careful consideration, to be illogical, opposed to public policy, and subversive of the supreme law of the land, the public welfare, and the sovereignty of the people, and, while not a nuisance *per se*, is the bulwark of nuisances and defense of unconscionable private demands, the source of continual local strife and litigation, and destructive of the peace of whole communities, it is the solemn duty of this Court to disapprove it and end its evil influences. Lieb. Herm. 208; 23 Am. & Eng. Enc. Law, 36; *Mayer* v. *Frobe*, 40 W. Va. 246-262, (22 S. E. 58). The decision in the case of *City of Wheeling* v. *Campbell*, instead of being a matter of repose, appealing, as it does, to the cupidity of human nature, has opened wide the door to numerous encroachments on the rights of the people by those whose selfish covetousness blind their eyes to the greater obligation they owe to the sovereign power in this land. which secures to them the blessings of liberty protected by law. Every law-abiding citizen, who loves, respects and cherishes the institutions of his country, is charged with the patriotic duty, through fealty to the people, to preserve all public rights intact. If there are those whose sentiment to public obligation is so weak as to cause them, through their promptings of private gain, to become exploiters of public rights, they should find no countenance in the decisions of the courts. The law can never be made the instrument of its own destruction in the hands of law-breakers, nor should it afford protection where allegiance is wanting. The doctrine of *stare decisis* cannot be invoked to perpetuate public nuisances or destroy the sovereignty and welfare of the people. The cases of *City of Wheeling* v. *Campbell*, *Forsyth* v. *City of Wheeling*, and *Teass* v. *City of St. Albans*, in so far as they hold that public ease-

ments in the public highways can be destroyed by private individuals contrary to the sovereign will of the people, are hereby disapproved as erroneously propounding the law.

Nor does the doctrine of estoppel apply in such cases. *Roper* v. *McWhorter*, 77 Va. 214, 222; 1 Dill. Mun. Corp. sections 96, 381, 749; Green's Brice, Ultra Vires, 42, 597; *Mayor* v. *Ray*, 19 Wall. 468; *Williamson* v. *Jones*, 43 W. Va. 562, 574, (27 S. E. 411;) *Webb* v. *City of Demopolis*, 95 Ala. 116, 13 South, 289; 1 Am. & Eng. Enc. Law, 882. The statute of limitations is a mere legal estoppel, and, if not applying to legalize a public nuisance, neither does equitable estoppel; for equity follows the law, and will grant no relief to a lawbreaker or wrongdoer. Clean hands and a clear title are always equitable requirements. *Bell* v. *City of Burlingtou*, 68 Iowa, 296, (27 N. W. 245;) *Cheek* v. *City of Aurora*, 92 Ind. 107. In 2 Dill. Mun. Corp. (4th Ed.) section 675, it is said: "Such a corporation does not own, and cannot alien, public streets or places, and no mere laches on its part, or on that of its officers, can defeat the right of the public thereto; yet there may grow up in consequence private rights of more persuasive force in the particular case than those of the public. * * * The author cannot assent to the doctrine that, as respects public rights, municipal corporations are impliedly within ordinary limitation statutes. It is unsafe to recognize such a principle. But there is no danger in recognizing the principle of an estoppel *in pais* as applicable to exceptional cases, since this leaves the courts to decide the question, not by mere lapse of time, but upon all the circumstances of the case, to hold the public estoppel or not, as right and justice may require." In this the rights of the people are confounded with the rights of the municipality. How can equitable estoppel, any more than the statute of limitations, deprive a sovereign of his rights, and permit his subjects to destroy them by their wrongful conduct? The use of their highways is a sovereign right, common to all the people, and of which they cannot be devested, except in accordance with their will and appointment for the public weal. The law is best enunciated in the case of *Webb* v. *City of Demopolis*, 95 Ala. 116, 13 South. 289, where it is held that "a city or town has no alienable interest in the

public streets thereof, but holds them in trust for its citizens and the public generally; and neither its acquiescence in an obstruction or private use of a street by a citizen, or laches in resorting to legal remedies to remove it, nor the statute of limitations, nor the doctrine of equitable estoppel, nor prescription, can defeat the right of a city to maintain a suit in equity to remove the obstruction." The words, "holds them in trust," are objectionable; for the reason that the people generally hold them and own the public easement, and the municipality merely has authority to supervise and keep them in repair and free from obstructions for the benefit of the whole people and the stranger within their gates. There may arise cases of particular hardship, where, through the negligence or mistake of the public officers, valuable permanent improvements, under a *bona fide* claim of right, may be erected by the abutting lot owners, invading and destroying, without wrongful intent, the public easement in a portion of the adjacent street. Such mistakes are often occasioned by different surveyors, with different instruments. Such invasion is sometimes slight in comparison with the improvements made, and at other times it is much more serious, not only destroying the public easement, but interfering with the regularity and symmetry of the street. To abate such structures as an ordinary nuisance would be a tyrannical act of governmental power, which finds no lodgment in the breasts of a free and just people. The mistake having been mutual or occasioned by the negligence of the public, and the property owner being free from evil intent, the loss should fall on the people, as most able to bear it, rather than on the individual, who may be rendered bankrupt if he must endure it. Such cases are provided for in section 9, Art. III. of the Constitution in these words: "Private property shall not be taken or damaged for public use without just compensation." This is a limitation put on the sovereignty of the people by the sovereign itself. It is intended for the public good, and to prevent oppression and injustice. Whenever private property is taken or damaged for public use, it must be done through the public officers, acting as the agents of the people. And for these same officers to mislead, either by acts of omission or commission, a private person into building a costly structure over the line of a

public highway, in the belief that he was within the limits of his own property, and then demolish or remove it as a public nuisance, would be taking and damaging private property for public use without just compensation. Hence, to regain the use of the highway lost in this manner, they must do so under the right of eminent domain, in so far as the intrusive structure is concerned. The land need not be condemned, but the damage to the structure, by the removal thereof, should be paid. Such exception does not apply to one who knowingly invades a highway. He must bear the loss occasioned thereby, and not the public. It is his own injury, and he must endure it alone. In the present case, the plaintiff, fully informed by his title papers, of his rights, wilfully invaded the street. In the case of *Spencer* v. *Railroad Co.*, 23 W. Va. 406, JUDGE GREEN, on page 422, intimates that the abutting lot owner's title extends to the middle of the highway. If such be the law, the title to the land in controversy is in plaintiff, subordinate, however, to the public easement; and, so long as he did not interfere with the public, he had the right to use this land for his private purposes, but, as soon as the necessities of the public required, he should have yielded it without controversy. This would have been in accord with his higher duty to the public, and would have showed that, in occupying the land, he was not actuated with any unlawful motive. But when he refused to surrender his possession, on demand of the proper legal authorities, he became guilty of maintaining a public nuisance, subject to abatement, either by the municipal authorities, under their statutory powers, or by an appeal to a court of equity. This cause having been instituted in a court of equity, it will not be dismissed without doing complete justice between the parties. *Hotchkiss* v. *Plaster Co.*, 41 W. Va. 367, (23 S. E. 576.) The decree complained of is reversed, and this cause is remanded to the circuit court, with direction that the plaintiff's injunction be dissolved, and that a mandatory injunction be awarded the defendant, at the plaintiff's costs, directing the plaintiff to abate the nuisance maintained by him thereon, and that the strip of ground in controversy be restored to Water street, and made subject to the public easement therein, and to be further disposed of according to the principles of equity.

*Reversed.*